(38 South. 488.)

No. 15,413.

DAVIES v. WILLIAM W. BIERCE, Limited.*

(March 27, 1905.)

EVIDENCE—PAROL MODIFICATION OF WRITTEN CONTRACT—DISTINCT CONTEMPORANEOUS AGREEMENT.

1. Where a writing, although embodying an agreement, is manifestly incomplete and not intended by the parties to exhibit the whole agreement, but only to define some of its terms, such parts of the actual contract as are not embraced within its scope may be established by parol evidence. The general rule of evidence prescribed by article 2276 of the Civil Code as to parol evidence not being allowed to alter, contradict, or vary written evidence is not violated by allowing parol evidence to be given as to a distinct, valid, contemporaneous, collateral agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement. One contract is often made the basis, inducement, or consideration of another, and, though connected, may be yet distinct, each having appropriate and specific rights and remedies peculiar to itself.

2. Plaintiff is entitled to have his pleadings considered and passed upon as an entirety.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Frank Davies against William

*Rehearing denied May 8, 1905.

W. Bierce, Limited. From a judgment for defendant, plaintiff appeals. Reversed in part.

Saunders & Gurley, for appellant. Fenner, Henderson & Fenner, for appellee.

Statement of the Case.

NICHOLLS, J. The district court rendered a judgment of nonsuit against the plaintiff, principally upon his pleadings, which were as follows:

He alleged that for many years previous to April 1, 1902, he was in the employ of William W. Bierce, Limited, a corporation organized under the laws of the state of Louisiana, and domiciled in the city of New Orleans, whereof William W. Bierce is president, and C. Bierce is vice president. That while in the employ of the said corporation he had charge of management of both the domestic and export railway equipment branch of the New Orleans office of the said corporation. That the said corporation also did business in the city of Chicago, where its president resided, and where it was intended to move its principal place of business and to maintain its principal office. That in the month of March, 1902, the said W. W. Bierce, Limited, determined to go out of the railway supply business, both domestic and export, with a view to discontinuing its office in Louisiana. That with this object in view they did make certain propositions to petitioner to sell him the business, which finally culminated in a contract between the parties, dated April 1, 1902, a copy of which is annexed.

That under the said contract petitioner purchased the good will, business, etc., of William W. Bierce, Limited, as done from the office in Louisiana, and being a plantation and railway supply business, both domestic and export; and also purchased certain catalogues and rolls for the making of steel crossties. That the said sale was made for the

sum of four thousand one hundred and fifty-one dollars and four cents ($4,151.04), which was represented by the notes of petitioner, dated April 1, 1902, due 12 months after date, and bearing 6 per cent. per annum interest. He alleges that when the said notes became due they were by mutual consent renewed for an additional period, and now being as follows: December 1, 1903, $593.01; January 1, 1904, $593.01; February 1, 1904, $593.01; March 1, 1904, $593.01; April 1, 1904, $593.01; May 1, 1904, $583.01; and June 1, 1904, $593.01—and are matured and unpaid.

That it was the intention of William W. Bierce, Limited, as exhibited by said contract referred to, and as further exhibited by various and sundry letters which William W. Bierce, Limited, wrote to various manufacturers, and particularly to the Kilbourne & Jacobs Manufacturing Company, of Columbus, Ohio, the Morden Frog & Crossing Works, of Chicago, Ill., the Decatur Wheel & Manufacturing Company, of Birmingham, Ala., the Kalamazoo Railway Supply Company, of Kalamazoo, Mich., the Oliver Iron & Steel Company, of Pittsburg, Pa., and the Republic Iron & Steel Company, of Chicago, Ill., all dated April 4, 1902, that the corporation should cease doing business from the Louisiana office, and should do business only from Chicago or some other distant point, so as not to become a competitor with petitioner from this point. Said letters are annexed to and made part of this petition.

That the catalogue and rolls included in the sale were of little or no value to petitioner, but that petitioner was compelled to accept them. That the consideration for which the notes were given was in reality the good will of the business and the withdrawal of the corporation as aforesaid.

That, as appears by the said contract, a certain contract between Charles L. Smith and the corporation was to be assumed by petitioner, and petitioner was to liquidate the business of the corporation, and also, as appears by the letter to the Kilbourne & Jacobs Manufacturing Company, all contracts between the Kilbourne & Jacobs Manufacturing Company were to be assumed by petitioner. That it was the understanding and agreement that the corporation should continue to sell rails in this territory up to January 1, 1903, but not thereafter. Petitioner alleges that he has faithfully carried out all his agreements and stipulations, but that, notwithstanding such, the said corporation has recently reopened its main office in the city of New Orleans, La., and is now conducting a business from the said office of the same kind and character that it conducted before the said contract of sale, and that the said business is in competition with the petitioner's business, and is a gross and unwarranted violation of the contract with petitioner. That he has protested and objected, but without avail; and that he is entitled to have the said contract enforced, and to have the said William W. Bierce, Limited, their officers and agents, enjoined from violating the said agreement and conducting business from a point in the state of Louisiana, or, in the alternative, to have the notes which petitioner has given as consideration for the said contract canceled and annulled and returned to petitioner. That such violation of the contract by the corporation is operating a serious injury and detriment to petitioner, the amount of which it is hard to determine, but which exceed the sum of $2,000. In view of the premises, he prayed that there be judgment in his favor, and against defendant, prohibiting and enjoining the said defendant from conducting a plantation and railway supply business, both domestic and export, from any point in Louisiana or adjacent thereto; and that the court further decree that the selling of rails and their accessories are included under the said business from Louisiana; then, in that event, as a condition precedent, petitioner's said notes

heretofore described be canceled and annulled, and returned to petitioner as fully satisfied, and petitioner be relieved of all liability thereon.

Petitioner also prays for all necessary orders, and for general and equitable relief.

He subsequently, on January 22, 1904, filed, with leave of the court, a supplemental and amended petition, in which he alleged that negotiations were pending between him and the said W. W. Bierce, Limited, up to April 4, 1902, and that said negotiations resulted in an agreement whereby the said W. W. Bierce, Limited, sold to petitioner the business and good will of the business theretofore conducted by the said W. W. Bierce, Limited, in the state of Louisiana; that the terms of said agreement are partly shown by the letter written by the said W. W. Bierce, Limited, to petitioner of date April 1, 1902, and are partly shown in the verbal agreement between plaintiff and the said W. W. Bierce, Limited, and are partly shown by the letters which are referred to in the original petition of date April 4, 1902, and which were annexed to and made part of the petition.

Petitioner reiterates all the averments in the original petition, especially those showing the said W. W. Bierce, Limited, sold the good will of their business in Louisiana to petitioner, as stated in the original petition, and that the said W. W. Bierce, Limited, in violation of their said contract, have returned to Louisiana and resumed business here, in violation of the stipulations contained in their said agreement with petitioner.

The prayer of this petition was that there be judgment in petitioner's favor as prayed for in the original petition.

Defendant had in the meantime, on the 12th of November, 1903, filed an exception of "no cause of action."

Attached to plaintiff's original petition was the following letter:

"New Orleans, April 1st, 1902.
"Mr. Frank Davies, New Orleans, La.
"Dear Sir: In order to enable you to establish yourself we will advance you up to $500.00 per month, from April 1st to December first, of this year, with proper vouchers attached, you each month to give us your note for this sum due in one year from date and bearing interest at the rate of 6 per cent per annum.

"When the stock is reduced to a point of about $1,000.00 in order to wipe out the stock feature entirely we shall turn same over to you at its cost taking your note therefor at twelve (12) months, and bearing interest at 6% per annum.

"It is also agreed that you shall, when requested to do so, execute note at twelve (12) months with interest at 6 per cent per annum, for the sum of $4,151.04, being the value of the catalogue purchased by us, and also, the rolls for the making of steel cross ties. It is mutually agreed between us that if, when this note comes due an exhibition of the business and figures for the year previous will show that you are not fully able to liquidate this, then we will grant you an extension on part of it, as may be mutually agreed upon.

"Whatever agreement exists at this date between William W. Bierce, Limited, and Charles L. Smith, are likewise to be assumed by you. In liquidating the business of William W. Bierce, Limited, without salary or expense to ourselves it is of course agreeable that you shall use our office for your business during your stay in New Orleans, and also whatever arrangement you may make with Mr. Gilbert to work with you, during his connection with us will be perfectly satisfactory to us."

Defendant appeared and filed an answer, which was preceded by the declaration that it withdrew the exception which it had previously interposed. After pleading the general issue, it admitted that it had entered into the contract with the plaintiff dated April 1, 1902, but denied that under the terms of said contract it bound and obligated itself to cease doing business in the manner and form alleged in the plaintiff's petition, or that by the terms of the said contract it sold to the plaintiff the good will of any part of its business. And now, assuming the position of plaintiff in reconvention, defendant shows to the court that in accordance with the terms of said contract of April 1, 1902, referred to in plaintiff's petition, the plaintiff, Frank Davies, executed and delivered to petitioner, as the purchase-

price of the catalogue and rolls for the making of steel cross-ties referred to in the said contract, his promissory note for the sum of $4,151.04, dated April 1, 1902, and made payable on April 1, 1903, with 6 per cent. per annum interest from date until paid.

That shortly before the maturity of the said note, upon representation of the said plaintiff that it would be very inconvenient for him to meet the same note at its maturity, and in consideration of the express promise by the said plaintiff that he could and would pay the said debt in several equal installments of $593.01 each, on the 1st day of December, 1903, January, February, March, April, May, and June, 1904, respectively, with interest at the rate of 6 per cent. per annum each from April 1, 1903, the interest up to that date having been paid by the said plaintiff, your respondent agreed to the said extension, and received from the said plaintiff, in lieu of the original note for $4,151.04, seven notes, all dated February 25, 1903, each for the sum of $593.01, and payable respectively, with 6 per cent. interest per annum from April 1, 1903, on December 1, 1903, January 1, 1904, February 1, 1904, March 1, 1904, April 1, 1904, May 1, 1904, and June 1, 1904; that for greater certainty respondent annexes hereto and files herewith all the said notes.

Now respondent shows that thereof the said notes, to wit, the notes maturing on December 1, 1903, January 1, 1904, and February 1, 1904, are past due and remain unpaid, in spite of amicable demand.

Respondent further shows that under the circumstances, and in view of the express promise in consideration of which the extension of the original indebtedness was granted, and of the violation of that promise by the plaintiff in his failure to pay the first three installments of the said indebtedness at the time when, in accordance with his agreement under which and as a condition of which the extension was granted, the said installments were to be paid, respondent is entitled to demand at this time the payment of the whole of the original indebtedness, to wit, the sum of $4,151.04, with interest at 6 per cent. per annum from April 1, 1903, until paid.

Defendant prayed that the demand of the plaintiff be rejected at his cost, and that there be judgment in respondent's favor, on its reconventional demand against the said Frank Davies, in the full sum of $4,151.04, with interest at the rate of 6 per cent. per annum from April 1, 1903, and costs.

Defendant filed later a supplemental answer, in which it averred that all of the notes referred to in the original answer and claim in reconvention were then past due and unpaid.

It prayed for judgment as originally prayed for.

As has been stated, the district court rendered judgment in favor of defendant, dismissing plaintiff's demand as in case of nonsuit. It further rendered judgment in favor of the defendant on its reconventional demand against plaintiff for $4,150, with interest and costs, and plaintiff appealed.

In the letters annexed to plaintiff's petition, dated on the 4th of April, 1902, the defendants advised the parties to whom they were writing that they had transferred their good will and interest to the railroad supply branch, both domestic and export, to their employé, Mr. Frank Davies, and that they were writing the letters with the purpose of recommending Mr. Davies to them in the highest possible degree, with the assurance that they would find his transactions in the future as satisfactory as they had been in the past. That Mr. Davies had inaugurated the business for them, both export and domestic, and had handled all its details ever since, and they were confident that with the energy possessed by Mr. Davies the business of the past was bound to

be materially increased in the future. That all orders from and after that date would be passed to them by Mr. Davies, and that his office for the time being would continue to be with the writer at Hennen building.

On the trial of the case the plaintiff took the stand on his own behalf, and was asked to state what negotiations took place between himself and the defendant in the month of March, 1902. Defendant objected to the question on the ground that this was a suit on a written contract, which is averred upon in the petition and annexed thereto as part thereof, and that no parol testimony was admissible for the purpose of varying, altering, or adding to the terms and conditions of that contract. Plaintiff added to the question so as to make it perfectly clear as to what he was asking. To what did these negotiations relate? Defendant objected on the ground that it was utterly irrelevant and immaterial whether negotiations took place or not. The court ruled that the petition declared upon a written contract, which was declared in the petition to be the culmination of negotiations preceding the contract, and the objection was therefore sustained. Plaintiff excepted.

He then showed to the witness a letter addressed to him, of date April 1, 1902, and asked what led Mr. Bierce to write and hand him that letter. Defendant objected that this was but another way of asking the witness to retail to the court the oral negotiations between the parties. and which culminated in that contract. The following. colloquy took place:

"By the Court: The question may have a tendency to prove some allegations in the petition concerning the contract, and it was admissible for that purpose.

"By Defendant's Counsel: Does your honor mean that he can recite these oral negotiations?

"By the Court: No, but there are certain things in the petition which it is competent for the plaintiff to prove.

"By Plaintiff's Counsel: The petition states that with this object in view—that is, the selling of the business by one, and the acquisition of it by the other—certain propositions were made. Now, Mr. Davies, answer the question.

"(Question read.)

"By Defendant's Counsel: I wish to put the record straight. Counsel for defendant objects to the question in as far as it may be intended to elicit, and in so far as it may elicit, from the witness, testimony in regard to parol negotiations or understandings or agreements between the parties prior to or contemporaneous with the execution of the written contract declared upon in plaintiff's petition.

"By the Court: To that extent the objection is sustained, but the witness is permitted to answer the questions. (To the witness) Do you understand the question?

"(Question read to the witness.)

"A. Negotiations that were pending for seven days prior to the 4th of April, 1902.

"By Plaintiff's Counsel: Negotiations looking to what?

"By Defendant's Counsel: Now I object to that.

"By the Court: The objection is overruled, for the reason that the contract sued upon is rather inartificial, and, perhaps, may not be as explicit as it should be; but in overruling this objection the testimony must be confirmed by supporting the allegations of the original petition taken in connection with the contract sued upon.

"By Plaintiff's Counsel: Then I understand the court to exclude evidence in support of the matter contained in the following paragraphs of the original petition.

"(Reading the paragraphs commencing with the words 'Petitioner alleges that it was the intention of William W. Bierce, Limited,' down to and including the words 'is a gross and unwarranted violation of the contract with petitioner.'

"By Plaintiff's Counsel: Now, I would like to know if it is the purport of the court's ruling that I am not permitted to prove the averments which are contained in all the paragraphs I have just read, because, if it is, I will not go on with the case.

"By the Court: The ruling of the court intends to exclude all evidence to support the allegations which have just been read from the petition, with the exception, possibly, of certain contracts with Smith and other people which have been mentioned, and which were to be executed by plaintiff instead of defendant, as agreed upon in that contract. Any evidence concerning those matters will be received.

"By the Plaintiff's Counsel: To which ruling of the court counsel excepts, and reserves this note in lieu of a bill of exceptions, and states that, inasmuch as the plaintiff is debarred from proving to the averments of the petition, the plaintiff offers no further evidence, all the material evidence that the plaintiff expected to offer being excluded by the ruling of the court.

"By the Court: Does that include the testimony taken under commission?

"Plaintiff's Counsel: I have nothing further

to do with the case, because I can't prove the averments in the petition. It is useless to go on.

"By' the Court: You requested the court to keep the case open for those commissions?

"Plaintiff's counsel announces that he will proceed no further with the case, but will protect his client's rights by an appeal."

### Opinion.

The objections urged in the district court to the admission of parol testimony, are based upon the provisions of article 2276 of the Civil Code, which declares that evidence shall not be admitted against or beyond what is contained in the acts (written), or on what may have been said before or at the time of making them or since. This rule is not peculiar to Louisiana. It is a recognized "rule of evidence" throughout the United States. Jones, in his work on the Law of Evidence, after copying Mr. Stephen's statement of the rule, adds:

"It is hardly necessary to cite authorities in support of the general rule above stated, as it is recognized in nearly all the cases hereafter cited in this chapter. The numerous exceptions and qualifications of the rule will appear in the discussions that follow. If the rule were strictly applied to these writings which are incomplete, informal, or transitory in their character, it might be deemed unreasonably rigid and harsh, but there can be no such criticism when applied to those more solemn documents in which parties have made a distinct and complete memorial of their agreement. Section 437. * * * In all cases where a writing, although embodying an agreement, is manifestly incomplete, and is not intended by the parties to exhibit the whole agreement, but only to define some of its terms, the writing is conclusive as far as it goes. But such parts of the actual contract as are not embraced within its scope may be established by parol. Section 445. If it does not purport to disclose the contract, but is merely the execution of some part or detail of an unexpressed contract, and is the act of one of the parties only in the performance of his promise, the oral agreement. as we have already seen, may be shown. Section 446.

"The general rule under discussion is not violated by allowing parol evidence to be given of the contents of a distinct, valid, contemporaneous agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement. The exception is thus stated somewhat more guardedly by Mr. Stephens: 'The parties may prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them.'

"Thus parol evidence may be received of a collateral agreement to show that the contract never had any legal existence, of a contemporaneous agreement by the vendor of property not to carry on a .competing business." Section 444.

Waite, on the Law of Contracts, § 130, thus refers to the same subject:

"It must not be taken that the rule against showing a prior or contemporaneous parol agreement forbids parties making separate written and oral agreements at the same time and as to the same subject-matter. Any number of independent contracts, each having its own proper consideration, may be made, some parol and some written, and the parol ·may modify, explain, vary, contradict, or multiply the written ones. The parol agreement may form part of the consideration of the written· contract, or the written contract may form the consideration for the contemporaneous parol agreement, if the oral agreement is not inconsistent with the written agreement, and if there is evidence that the parties did not intend the written contract to be a complete transaction. When oral contracts are made at the time written contracts are entered into, then they should rest upon a separate and distinct consideration; and, when they have been arrived at, they should be regarded as distinct and collateral agreements, and not a part of the written contract."

In Pierce v. Woodward, 6 Pick. 206, it appeared in evidence that the plaintiff had purchased of the defendant a parcel of land, with a store and dwelling house upon it, the consideration expressed in the deed being $25, which sum was paid. There was much parol evidence tending to prove that a principal inducement for the plaintiff to purchase was the succeeding to the business which had been carried on in the same store by the defendant, and it was proved to the satisfaction of the jury that, in order to induce the plaintiff to purchase, the defendant agreed not to engage in the same business within certain limits. This parol evidence was objected to, as being inconsistent with the terms of the deed, and as relating to the sale of land. It was contended by the plaintiff that $500 of the purchase price was given for the agreement

not to carry on the business as stated, but there was contradictory evidence as to this, and it was not considered as proved. In its judgment the court said:

"Though the verbal contract upon which this action is brought was not a specific part of the bargain for the land, and did not affect the price, yet it appears that it was an inducement for the contract, and to make the plaintiff purchase. It is therefore founded upon a sufficient consideration. * * * The introduction of parol evidence to prove the contract was likewise objected to, but we do not consider the evidence as inconsistent with the deed or as affecting the conveyance of real estate."

The syllabus of Fusting v. Sullivan, 41 Md. 162, reads as follows:

"While parol evidence is inadmissible to vary or contradict a written contract, it is admissible to prove an independent collateral fact about which the written contract is silent.

"When by a written contract F. sells his store, the stock of goods therein, barn, and barnyards to S., upon terms specified, parol evidence is admissible to show that it was verbally agreed between the parties during the negotiation, and before the contract was concluded, that S. bought with the distinct understanding that F. would not go into business at Catonsville, the place where the store was located, and that the acquisition of the good will, and the agreement of F. not to set up another store in Catonsville, was part of the consideration of the purchase."

The court said:

"Although the good will of the store and the agreement not to set up another were, according to the statement of Shipley, material elements of the consideration to be given for the purchase of the property, yet they were not necessarily involved in the purchase nor referred to in the contract, and were in fact accidental and collateral."

The general rule is well defined, with exceptions broadly delineated in all the text-books, illustrated by almost innumerable exceptions.

The test of admissibility in such cases is whether the evidence offered tends to alter, vary, or contradict the written contract, or only to prove an independent, collateral fact about which the written contract was silent. In the former case the testimony is inadmissible; in the latter it is competent and proper.

In dealing with the case before us, we will dispose of the issues submitted to us in the reverse order in which they were presented, as in so doing the whole legal situation will be brought at once clearly to view. Defendant, beyond dispute, proved up his claim, and the decree in its favor was correct, unless there was something in plaintiff's demand which withdrew from it the right to obtain judgment. Assuming it to have been established that the defendant had agreed not to do business in New Orleans in competition with the plaintiff, and had violated its obligation in that respect, it would not follow as a consequence that this violation would have as to its consequence the right of the plaintiff either to dissolve the contract of sale or to stand in the way of the judicial enforcement at their maturity of the notes representing the price of the sale. The contract of sale and the agreement not to engage in business, though to some extent connected with each other, are separate and distinct, each having its separate legal sanction and effect.

The two agreements are different in their nature and character. The contract of sale falls under our classification of contracts or obligations as an obligation "to give," while the agreement "not to engage in business" falls under the designation of a contract or obligation "to do or not to do."

The maturity of the notes and the nonpayment of the same at the date of the reconvention entitled the defendant to sue upon them, subject to any defense which the maker had to the enforcement of the particular contract of sale. The failure of the defendant to carry out any agreement it had made "not to engage in business" would have entitled the plaintiff to demand the specific performance of that agreement through the instrumentality of an injunction which would prevent it from doing so under legal penalties, but would not entitle the plaintiff to dissolve the sale for nonexecution of its conditions, nor bar an action on the notes. It is obvious that the contingent alternative demand made

by the plaintiff in this case, that his notes representing the note should be returned to him, has no legal basis on which to rest. His demand is not one for a dissolution or rescission of the sale. Among other legal objections to its being so considered, is the fact that the plaintiff did not offer to restore the things which he had purchased, but had disabled himself from so doing. We are of the opinion, for the reasons assigned, that the judgment in favor of the defendant upon its reconventional demand is correct, and it is hereby affirmed.

We now direct our attention to plaintiff's demand. We have just stated that the alternative demand has no legal foundation. Our view of the legal situation from the standpoint of plaintiff's right to an injunction should he sustain his allegations, and his right to sustain his allegations by parol evidence, differs from that taken by the district court. That court, instead of dealing with the petition as a whole, and reading its allegations in connection with the letters annexed to it, stopped short at the one single allegation made in the petition that "defendant, with the object in view of discontinuing its business in Louisiana, had made certain propositions to him which finally culminated in a contract between the parties dated April 1, 1902, a copy of which was annexed," and assigned and attributed to that single allegation the force and effect of a judicial admission that the prior negotiations were all merged in the instrument so referred to and annexed, and that that paper contained the entire contract between the parties.

In so doing, the district court erred. The plaintiff was entitled to have his petition considered as an "entirety," and in connection with the papers annexed. So considering the pleadings and the letters annexed, we are of the opinion that the court below should not have restricted as it did the plaintiff in his proof. Allegations of plaintiff (other than the one mentioned) clearly take from

that particular averment the character of a judicial admission that the letter of the 1st of April, 1902, embodied the entire contract between the parties. That paper contains no allusion whatever to a sale of the good will of the defendant's business. It is silent on that point, and, though defendant itself in its answer expressly denies that there was any such sale, yet the letters of the defendant to various parties "admit" that, over and beyond the articles sold to the plaintiff, it made a sale of the "good will" of the business. An examination of the papers annexed show on their face that they are mere incomplete, informal, and transitory references to the contract, made by one of the parties, not disclosing the contract, but alluding to parts or details of the unexpressed contract. The "admission" is not a "contract." Board v. Campbell, 48 La. Ann. 1549, 21 South. 188.

Plaintiff expressly alleges in his petition that it was the understanding and "agreement" that "the defendant should continue to sell rails in this territory up to January 1, 1902, but not thereafter." While plaintiff specially sets up this agreement, the letters annexed to the petition are silent upon the subject; therefore, if such an agreement was in fact made, it had necessarily to be found dehors these papers, and these papers did not embody the entire contract. The agreement was a collateral oral agreement, in respect to which the papers annexed were silent, which did not contradict nor vary or alter the contract of sale; and this collateral agreement was controlled in its scope and as to its sanction and remedies outside of the contract of sale. The books are full of examples of these collateral agreements which do not affect and are not "conditions of" the main contract with which they are connected, though they are frequently "inducements" to the making of those contracts. The agreement by the purchaser to insure goods which are sold on a credit, the agree-

ment to have a survey made later of property sold, the assumption of payment of the money due and to be due for the lease of the house in which the articles sold may be stored, are instances of collateral agreements which do not affect the execution of the main contract, though connected with it. One contract is often made the basis, inducement, or consideration of another, though both are distinct. Walker v. Villavaso, 18 La. Ann. 717; Pierce v. Woodward, 6 Pick. 206.

We are of the opinion that the court erred in excluding all of the parol evidence offered by plaintiff, and forcing upon him a nonsuit.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it rendered judgment in favor of the defendant and against plaintiff, dismissing his demand and suit as in case of nonsuit, be, and the same is hereby, annulled, avoided, and reversed, and that branch of the suit is reinstated on the docket of the district court for further proceedings according to law. It is further ordered, adjudged, and decreed that otherwise the judgment appealed from is affirmed; costs of appeal to be borne by the appellee.