## NEW ORLEANS TERMINAL CO. v. DIXIE RENDERING, INC.

---

(March 21, 1932. Opinion and Decree.)
(April 18, 1932. Rehearing Refused.)
(April 23, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

---

Monroe & Lemann and Walter J. Suthon, Jr., of New Orleans, attorneys for plaintiff, appellant.

Dart & Dart and Leo L. Dubourg, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. New Orleans Terminal Company sues Dixie Rendering, Inc., for $796.21, claiming that amount to be the balance due for repairing, under contract, a switch track belonging to defendant and connecting with the tracks of plaintiff company.

The district court dismissed the suit on exception of no cause of action.

Exceptor maintains that the contract under which plaintiff undertook to make the repairs is evidenced by two certain final letters into which all prior negotiations and correspondence had become merged and, according to exceptor, in those letters it was understood that $2,070 was to be the total cost of the repairs. It is therefore argued that, since the said sum, $2,070, has been paid, the petition shows no cause of action.

Plaintiff asserts that the petition shows that the two letters referred to were merely the last in a long series of letters and followed some verbal negotiations, and that the said last two letters show in themselves that they do not contain the complete contract, which, according to plaintiff, can only be obtained from the oral evidence and earlier correspondence which will be offered in support of the allegations of the petition.

The two letters, which exceptor maintains, contained the entire correspondence, read as follows:

"January 19, 1924.
"Mr. E. H. Wischan, President, Dixie Rendering, Incorporated, Alabo and North Peters Street, New Orleans, Louisiana.
"Dear Sir: Referring to conversation in this office with the writer this morning.
"The following is a detailed estimate of the cost for making necessary repairs to the track serving your plant formerly known as the St. Bernard Rendering and Fertilizer Company:

| | | |
|---|---|---:|
| 300 | Cross Ties | $ 270.00 |
| 1 | Set switch ties | 115.00 |
| 20½ | Tons 75-pound relay rail | 810.00 |
| 90 | Joints | 30.00 |
| | Labor for making necessary repairs to track beyond trestle | 225.00 |
| | Lumber for repairs to trestle | 390.00 |
| 150 # | Bolts | 8.00 |

Labor for making repairs to
trestle ----------------------------------- 222.00

Total ------------------------------- $2,070.00
"If you will let me have certified check
to cover the cost of these necessary re-
pairs we will instruct that the work on the
track be started at once.
"Yours truly,

"Vice-President."

"January 21, 1924.
"New Orleans Terminal Company, Q. & C.
Building, Camp & Natchez Sts., City.
"Attention Mr. J. E. Fitzwilson, Vice-Pres.
"Gentlemen: Enclosed herewith please
find certified check for $2,070.00 covering
cost of repairs to our Switch Track as per
your estimate on file.
"We understand that the rails that you
are to remove are those placed there at
your own expense in conjunction with St.
Bernard Rendering & Fertilizing Co. when
they made repairs sometime ago, now since
we are assuming the entire cost of the re-
pairs to be made as agreed we wish it
clearly understood that this improvement
will place us in control of this switch, in
other words the property will be our own.
"We wish to impress upon you the neces-
sity of beginning this work at once.
"Yours very truly,
"Dixie Rendering, Incorporated,
"By (Signed) E. S. Wischan,
President."

The petition alleges that the cost of the
work was $2,866.21, and that, in the nego-
tiations which preceded the two letters,
which we have quoted in full, it was
agreed that the railroad company would
do the work and charge the rendering
company the cost thereof, which cost was
merely estimated to be $2,070, but that it
was understood that, if the actual cost ex-
ceeded· that estimate, then the actual cost
would be paid.

The word "estimate" contained in the
letter of January 19th is susceptible of
two interpretations. It may have been
used in the sense of a "bid," or "offer," or,
on the other hand, it may have been in-
tended that the meaning to be thereby
conveyed was "approximate," and, in view
of the allegations of the petition, it is
easy to see that evidence as to the con-
tents of the prior correspondence and as
to verbal discussions will be necessary to
place upon the word "estimate," as used
in the letter, the meaning intended by the
parties to be thereby conveyed.

There is, as stated by exceptor, a well-
established rule of law, which, in McGuigin
v. Boyle, 1 Or. App. 166, is quoted from
page 372 of Greenleaf on Evidence as fol-
lows:

"When parties have deliberately put their
engagements into writing in such terms
as impart a legal obligation without any
uncertainty as to the object or extent of
such engagement it is conclusively pre-
sumed that the whole engagement of the
parties, and the extent and manner of
their undertaking, was reduced to writing;
and all oral testimony of a previous col-
loquium between the parties, or of con-
versation, or declarations, at the time when
it was completed, or afterwards, as it
would tend in many instances to substitute
a new and different contract for the one
which was really agreed upon, to the prej-
udice, possibly, of one of the parties, is
rejected. In other words, as the rule is
now more briefly expressed, parol contem-
poraneous evidence is inadmissible to con-
tradict or vary the terms of a valid writ-
ten instrument."

But here, from the documents themselves,
to-wit, the letters quoted, it appears that
it was probably not intended by the par-
ties that those letters should constitute the
entire agreement. But, even if such was
the intention, it is evident that the oral
evidence of verbal understandings and of
prior communications is not intended to
contradict or vary anything contained in
those letters, but only to supplement them,
and to explain away what might otherwise
be ambiguous.

The rule of law applicable to the right
of parties to supplement by parol incom-

plete written documents is set forth in Davies v. Bierce, 114 La. 663, 38 So. 488, as follows:

"Where a writing, although embodying an agreement, is manifestly incomplete and not intended by the parties to exhibit the whole agreement, but only to define some of its terms, such parts of the actual contract as are not embraced within its scope may be established by parol evidence. The general rule of evidence prescribed by article 2276 of the Civil Code as to parol evidence not being allowed to alter, contradict, or vary written evidence is not violated by allowing parol evidence to be given as to a distinct, valid, contemporaneous, collateral agreement, between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement."

That an ambiguity in a written document may be explained by verbal evidence is well settled, and this rule has been well expressed by our Supreme Court in the case of Dickson v. Ford et al., 38 La. Ann. 736, in which is found the following:

"The reason or the philosophy of the rule which, as an exception, flows logically from the very terms of the general rule, is that parol evidence, in such cases, is admitted, not against or beyond what is contained in the acts, as a contradiction of the clear recital, or legal meaning of the stipulations contained therein, but on the contrary, to give effect to the contract arising therefrom, by supplementing necessary information omitted therefrom, or to ascertain the true intent of the parties when the same is not clearly expressed or described therein.

"As thus understood and construed, the rule is not amenable to the charge that it tends to destroy or impair the sanctity or binding force of authentic acts, but on the contrary, it tends directly to enhance the validity and efficacy of such acts, by substituting light for darkness, certainty for obscurity, and truth for error."

Since we believe that evidence of the prior conversations and of the earlier communications may explain and amplify the two letters referred to, and that such evidence may show an agreement on the part of defendant to pay the actual cost, it follows that the exception should not have been sustained.

The judgment appealed from is annulled, avoided, and reversed, and the matter is remanded to the district court for further proceedings according to law and not inconsistent with the views herein expressed.