## NEW ORLEANS TERMINAL CO. v. DIXIE RENDERING, Inc.*

### No. 14697.

Court of Appeal of Louisiana. Orleans.

Feb. 21, 1938.

Monroe & Lemann and J. Raburn Monroe, all of New Orleans, for appellant.

Dart & Dart and Louis C. Guidry, all of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff railroad company filed this suit seeking the recovery of an alleged balance due on a contract whereby it agreed to repair a certain switch track belonging to the defendant.

The facts of the case are, for the most part, undisputed, and the proper determination of the cause hinges upon the interpretation to be given to the word "estimate" as used by the plaintiff in its letter to the defendant of date January 19, 1924.

This is the second time the matter has been presented to us for review. On the first occasion, we were called upon to decide the correctness of the lower court's judgment in dismissing plaintiff's suit on an exception of no cause of action. See 19 La.App. 611, 140 So. 272. In view of the contentions now submitted to us, we believe it to be apt to state a brief history of the litigation.

The plaintiff is a railroad corporation owning and maintaining certain tracks and roadbeds within the parish of St. Bernard,

* Rehearing refused March 21, 1938; writ of certiorari denied by Supreme Court May 2, 1938.

La. In the operation of its business as a common carrier, it serves certain industries in that section and, prior to the year 1923, it had established a private spur or switch track which connected the plant of St. Bernard Rendering & Fertilizer Company with its main tracks.

The St. Bernard Rendering & Fertilizer Company was adjudicated a bankrupt some time during 1923, and on April 9th of that year one Ernest H. Wischan purchased all of the property owned by the bankrupt including the switch track now under discussion. During the month of August, 1923, the defendant corporation was formed and it acquired the property purchased by Wischan which he had transferred to the New Orleans Butchers Co-operative Abattoir Company. Wischan, at about that time, became the president and general manager of the defendant company, and at all times hereinafter mentioned, he acted for and on behalf of the latter in his dealings with the plaintiff.

During the month of June, 1923, the plaintiff ascertained that the switch track serving the St. Bernard Rendering & Fertilizer Company was in bad condition and wrote to Mr. W. E. Winship, trustee for the bankrupt, informing him that the estimated cost for making temporary repairs to the spur would be $152. Mr. Winship, having disposed of the property of the bankrupt to Mr. Wischan and the New Orleans Butchers Co-operative Abattoir Company, informed the plaintiff by letter that the latter were the proper parties to communicate with respecting the track. Contacts by correspondence were thereupon made with Mr. Wischan, and negotiations resulted with a view to the installation of the necessary repairs to the switch track for the defendant corporation. The correspondence offered in evidence as well as the parol testimony in the case reveal that Mr. Wischan was desirous of having permanent repairs made to the switch track so that the industry of the defendant company could be adequately serviced. To this end, the plaintiff estimated the cost of these permanent repairs to be the sum of $2,070, and on September 7, 1923, it advised the defendant by letter to this effect. Certain other correspondence respecting the cost of the repairs then under discussion was had between plaintiff and defendant, and on January 19, 1924, plaintiff wrote to defendant and furnished a detailed estimate of the cost of the proposed work as follows:

"Mr. E. H. Wischan,

"President, Dixie Rendering Incorporated,

"Alabo and North Peters Street,

"New Orleans, Louisiana.

"Dear Sir:

"Referring to conversation in this office with the writer this morning.

"The following is a detailed estimate of the cost for making necessary repairs to the track serving your plant formerly known as the St. Bernard Rendering and Fertilizing Company:

| | | |
|---|---|---|
| 300 | Cross ties | $ 270.00 |
| 1 | Set switch ties | 115.00 |
| 20½ | Tons 75-pound relay rail | 810.00 |
| 90 | Joints | 30.00 |
| | Labor for making necessary repairs to track beyond trestle | 225.00 |
| | Lumber for repairs to trestle | 390.00 |
| 150# | Bolts | 8.00 |
| | Labor for making repairs to trestle | 222.00 |
| | Total | $2,070.00 |

"If you will let me have certified check to cover the cost of these necessary repairs we will instruct that the work on the track be started at once.

"Yours truly, Vice-President."

In reply to this communication, defendant advised by letter of January 21, 1924, as follows:

"New Orleans Terminal Company,

"Q. & C. Building,

"Camp & Natchez Sts.

"City.

"Attention Mr. J. E. Fitzwilson, Vice-Pres.

"Gentlemen:

"Enclosed herewith please find certified check for $2,070.00 covering cost of repairs to our Switch Track as per your estimate on file.

"We understand that the rails that you are to remove are those placed there at your own expense in conjunction with St. Bernard Rendering & Fertilizing Co. when they made repairs sometime ago, now since we are assuming the entire cost of the repairs to be made as agreed we wish to have it clearly understood that this improvement will place us in control of

this switch, in other words the property will be our own.

"We wish to impress upon you the necessity of beginning this work at once.

"Yours very truly, Dixie Rendering Incorporated,

"By (Sgd.) E. S. Wischan.

"EHW/JSL President."

In accordance with the foregoing, the plaintiff performed the necessary work at an alleged cost of $2,866.21. Having already received from the defendant the sum of $2,070 (which plaintiff contends is the estimated cost as shown by its letter of January 19th), it now seeks recovery of $796.21 which it claims as the balance due owed by defendant under the contract.

Defendant appeared at the outset, by way of exception of no cause of action, asserting that the exchange of correspondence between the parties dated January 19 and January 21, 1924, which culminated. the series of negotiations respecting the work to be performed by the plaintiff, was the final written contract and that the wording of these letters clearly disclosed that plaintiff agreed to perform the job for the fixed price of $2,070.

Plaintiff, on the other hand, contended that its petition plainly revealed that the intention of the parties was to be found in the long series of prior negotiations and was not to be adjudged by the language contained in one single letter or other writing.

The district judge agreed with the defendant's contention, sustained the exception, and dismissed the plaintiff's suit. But on appeal (19 La.App. 611, 140 So. 272, 273) we reversed his decision, it being our opinion that: "The word 'estimate' contained in the letter of January 19th is susceptible of two interpretations. It may have been used in the sense of a 'bid,' or 'offer,' or, on the other hand, it may have been intended that the meaning to be thereby conveyed was 'approximate,' and, in view of the allegations of the petition, it is easy to see that evidence as to the contents of the prior correspondence and as to verbal discussions will be necessary to place upon the word 'estimate,' as used ·in the letter, the meaning intended by the parties to be thereby conveyed." · Writs seeking a review of our decision were applied for by the defendant to the Supreme Court and were denied. Thereupon, the case was remanded to the district court for hearing on its merits.

Thereafter, the case was tried on its merits in the district court and resulted in a dismissal of plaintiff's action. Wherefore this appeal.

When we decided the question presented by the exception of no cause of action, we. realized that there may be instances where the word "estimate" could have been intended as a "bid" or a definite offer as well as being used in its ordinary sense to denote an approximation of the cost for which certain work would be done. It was for this reason that we felt that, in view of the controversy between the parties, it was necessary and proper for parol evidence to be introduced in order that the true intention of the obligor and obligee might be resolved. But without the aid of parol evidence, we would have been prompted to hold that the word "estimate" was used in the plaintiff's letter in its ordinary and usual sense. Bouv.Law Dict., Baldwin's Library Edition, p. 365, defines the word "estimate" to be:

"A word used to express the mind or judgment of the speaker or writer on the particular subject under consideration. It implies a computation or calculation. [People'v. Clark] 37 Hun [201] 203.

"A rough valuation; an appraisement. English. Equivalent to 'assess'. Both mean 'to fix' the amount of the damages or the value of the thing to be ascertained. 11 A. & E. Ency. 2nd Ed., 383; [Roddy & Dahm v. McGetrick] 49 Ala. [159] 162.

"Estimated cost of a building held to mean the reasonable cost of a building erected in accordance with the plans and specifications referred to, and not necessarily the amount of some actual estimate made by a builder, nor an estimate agreed upon by the parties, nor yet an estimate or bid accepted by the defendant. Id.; [Lambert v. Sanford] 55 Conn. 437, [12 A. 519]."

In the syllabus of the case of Egleston v. Hirsch, No. 9549 of our Docket, see Louisiana and Southern Digest, which involved a question somewhat similar to the one now under review, we said:

"A clause in a building contract reading: 'My maximum estimate of the cost of your work is six thousand dollars, including my commission, though I expect to get through with less money, possibly as little as five thousand dollars,' carries no warranty' as to the ultimate cost, and cannot be pleaded as such by the owner when he is sued for an unpaid balance due the

builder as commissions based on ten per cent. of the maximum estimate."

In Bautovich v. Great Southern Lumber Co., 129 La. 857, 56 So. 1026, 1027,. Ann. Cas.1913B, 848, our Supreme Court had occasion to consider the word "estimate" as used in a contract. In defining its meaning, the court observed:

"The word 'estimate' precludes accuracy, and its ordinary meaning is to calculate roughly or to form an opinion from imperfect data. Words and Phrases, [First Series] vol. 3, p. 2493. The word 'estimate' has no more certainty than the terms 'about' or 'more or less.'"

Hence, as we have above stated, were we compelled to decide this case on the meaning of the word "estimate," without the benefit of other correspondence or parol testimony we would be impelled to hold that it was plaintiff's intention, in submitting a detailed estimate of the cost, to merely furnish the defendant with an approximation of the expense attached to the work to be performed. However, since plaintiff maintains that its letter of January 19 did not constitute the whole agreement but that prior letters and negotiations should be investigated, we turn to this evidence as our guide in order to resolve the true intention of the parties.

A perusal of the evidence submitted at the trial below has convinced us that the plaintiff refused to undertake the work of repairing the switch track unless the defendant would agree to reimburse it for the actual expense of the job. This conclusion is not only borne out by the previous correspondence between the parties, but is likewise shown by the testimony of Mr. Stoll and Mr. Smith, representatives of the plaintiff. Moreover, Mr. Wischan, the president of the defendant company, admitted on the witness stand that Mr. Stoll, at all times during the negotiations, insisted that the railroad company would not consent to perform the work except on an actual cost basis. Mr. Wischan, however, asserts that he at no time agreed to such an arrangement but that he always demanded that the plaintiff quote him the actual cost of the repair work. He concludes that he would not have entered into the contract had he not been of the opinion that the railroad company, by its letter of January 19th had altered its position and that it intended, in writing that letter, that the work would be done for the fixed price of $2,070. How Mr. Wischan is able to arrive at this deduction, we are at a loss to understand for he concedes, on cross-examination, that neither Mr. Stoll nor any other representative of the railroad informed him that the latter had changed its position with respect to payment of the actual expense involved in the undertaking. We believe that, because of the fact that plaintiff's stand in the matter had been made clear to Mr. Wischan, it became incumbent upon him to state in his letter of acceptance of date January 21st that the defendant would not be responsible for any amount in excess of $2,070. This he did not do. A reading of his letter impresses us with the thought that he not only refrained from telling plaintiff that defendant considered its liability fixed at $2,070, but that his paramount desire was to have plaintiff distinctly understand that the defendant was to be vested with title to the switch track, and that it was imperative that the work be started at once.

Again, we note that Mr. Stoll and Mr. Smith of the plaintiff company both testified that, in a conversation with Mr. Wischan sometime prior to the date the contract was confected, the latter stated that he did not believe that the cost of the repairs would exceed $2,070. Mr. Wischan denies that he ever made such a statement. We feel, however, that the plaintiff's evidence prevails on this score. In weighing the testimony in cases such as this, it is significant to consider the motives of the parties. The repair of the switch was obviously vital to the advancement of defendant's operations, while the only advantage accruing to plaintiff was the hope of an increase in freight business by handling shipments made from defendant's plant. It is also manifest that the railroad, by execution of the contract other than on an actual cost basis, had everything to lose, as it is plain that it was neither engaged in nor attempting to operate a contracting business. Mr. Wischan must or should have been cognizant of these truths throughout his dealings with the railroad.

Counsel for the defendant contend that the wording of plaintiff's letter of January 19th was such as to convey to Mr. Wischan the thought that plaintiff had changed its position with respect to its demand for actual cost of the work to be performed, and they point with confidence to the last paragraph of plaintiff's letter in forti-

fication of the argument. That paragraph reads:

"If you will let me have certified check to cover the cost of these necessary repairs we will instruct that the work on the track be started at once."

■■ It is said that this language, in view of the insistence of Mr. Wischan that he be given a definite cost, could mean only one thing, i. e., that the railroad had agreed to do the work at a cost of $2,070. We cannot agree with this postulation for the reason that the word "cost" as used in the last sentence of the letter refers to the detailed estimate contained in the second paragraph. It is well settled that the intention of the parties to a contract is to be gathered, not from a single sentence or word, but from the whole instrument read in the light of circumstances existing at the time of negotiations leading up to its execution. See Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265.

Counsel for defendant have favored us with a supplemental brief in which they cite the case of Skagit Mill Co. v. Great Northern Ry. Co., 111 Wash. 378, 190 P. 901. It is submitted by them that that authority sustains the contention that, under contracts such as this, the estimated cost of putting in or repairing spur tracks is equivalent to the actual fixing of a definite price to be paid for the work. We have carefully read the cited case and can find no distinction in principle between the conclusion there reached and the facts of the case at bar. We do not agree, however, with the ruling of the Washington Supreme Court for the reasons hereinabove pointed out.

■ Being of the opinion that plaintiff is entitled to recover the actual cost of the repairs made to defendant's switch track, we next consider the amount to be awarded. The expense of the work as claimed by plaintiff is $2,866.21 on which defendant has paid $2,070, leaving a balance of $796.21. This total cost of $2,866.21 has been proved to our satisfaction with the following exceptions: There is one item amounting to $31.65 representing rails which were not used by the plaintiff in the performance of the work and for which defendant is undoubtedly entitled to credit. We also find that in plaintiff's statement of labor and material used, there is a charge of 10 per cent. overhead on labor and 15 per cent. on material. While items

of overhead are ordinarily allowable as cost, it was obviously the plaintiff's duty to have included them in the detailed estimate furnished defendant on January 19th. Plaintiff's witnesses state that these charges were omitted from the estimate through oversight. In view of this, it cannot be fairly said that any overhead expense was contemplated by the parties. The sum of these items of overhead aggregate $194.52 which, when added to $31.65 (previously credited), amounts to a total reduction of $226.17.

■ Since this appeal has been lodged in this court, the defendant has gone into liquidation. The liquidators have been made parties to the proceeding and they therefore will be cast in the judgment as the legal representatives of the corporation.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of the plaintiff, New Orleans Terminal Company, and against F. F. Lozes, F. G. Wagner, and E. H. Wischan, liquidators of the defendant, Dixie Rendering, Inc., in the full sum of $570.04, with legal interest thereon from April 25, 1924, until paid and all costs.

Reversed.