JANVIER, Judge.
Lee Paige, a night club “entertainer” brought this suit for damages for breach of contract against Jake Pecoraro, the operator of a night.club in the downtown section of New Orleans. He alleged that he entered into a contract with Pecoraro, under which he and his partner were to appear each night and perform in an act known as “Satan and the Virgin”, and that he was to be paid $50 per week for four weeks. His partner was to receive similar compensation. He charged also that he and his partner appeared on the first night of the engagement and that the performance was entirely satisfactory; that on the second night they again appeared but were then advised that they would not be permitted to perform again as they had breached their contract by performing, without the permission of defendant, at a rival night club in the intervals between performances' at the establishment of defendant.
The defendant admitted that he had entered into a contract with the plaintiff for *663 the appearance of plaintiff and his partner and that they had appeared on the first night and had staged the performances contracted for at the times agreed upon, but he averred that on the second night, a Saturday, they had appeared late for the performance, and that he, the defendant, had learned that the reason for this tardy appearance was that the two performers were appearing at a rival night club about a block away.
There was judgment dismissing the suit, and plaintiff has appealed.
The principal controversy arises over the question of whether there was an oral agreement which preceded the rather sketchy telegram, which was admittedly sent by defendant and received by the plaintiff. That telegram reads as follows:
“Lee Paige and Miss Loma Gary
“Open Friday the 21st for four (4) weeks at $50.00 per week each.
“(Signed) Jake.”
The plaintiff contends that there was no preliminary verbal agreement as to the times at which the performances would be staged, and that especially there was no agreement that the two performers were not to appear at any other night club during the term of the contract.
The defendant contends, on the other hand, that there was a preliminary discussion at which all the details were agreed upon and that it was understood that if he decided to employ the plaintiff and his partner on the terms and conditions which had been previously agreed upon, he was merely to send the telegram advising plaintiff and his partner that he, the defendant, had decided to enter into the contract. In other words, that the telegram was not to evidence the entire contract, but was merely to evidence the fact that the terms and conditions which had been previously discussed were acceptable to defendant.
The plaintiff produced no evidence except his own testimony in support of his contention that the entire contract was intended to be set forth in the telegram. His partner, Loma Gary, not only did not join in the suit, but did not appear to testify in his behalf. Counsel for plaintiff, in his argument before us, stated that Loma Gary is now in Hollywood, California, and could not come to New Orleans and that it would have been too expensive to take her testimony through interrogatories or otherwise. He also said that though Miss Gary had not yet filed suit, she would do so if this suit should terminate favorably to the plaintiff.
Plaintiff testified that he and his partner were to appear four times each night at 11:00, 12:00, 1:00 and 2:00 o’clock, and that they did so on the first night and were prepared to stage all performances on the second night.
Defendant and his manager testified that the appearances were to be at 10:00, 12:00, 2:00 and 4:00 o’clock, and that although plaintiff and his partner had appeared at the proper times on the first night, which was a Friday, they did not appear on Saturday night until 11:00 o’clock, and that his patrons were dissatisfied and wondered why the performers did not appear. He and his manager testified that they heard that plaintiff was appearing at a rival night club and that they went to that club and there found the rumor to be well founded, and that the plaintiff and his partner were appearing at this rival night club in the intervals between performances at defendant’s establishment.
Although plaintiff contends that the telegram was intended to set forth the entire agreement, it is very obvious that there must have been an understanding as to the nature of the performance and as to the number and the times of the appearances for eaoh night, and these essential details are not even referred to in the telegram.
Of course, it is well settled that where two parties have preliminary discussions over a proposed contract and then agree to put the contract into writing and, by the writing, to evidence the entire agreement, no oral evidence may be offered to show the details of the preliminary discussions and to vary thereby the plain terms of the written contract. But, on the other hand, there can be no question that where two parties have preliminary discussions *664 and verbally agree as to the terms of a contract, verbal testimony may be resorted to to prove the terms of the contract. We think that that is what occurred here.
In New Orleans Terminal Co. v. Dixie Rendering, Inc., 19 La.App. 611, 140 So. 272, 273, we quoted from Davies v. William W. Bierce, 114 La. 663, 38 So. 488, as follows: “Where a writing, although embodying an agreement, is manifestly incomplete and not intended by the parties to exhibit the whole agreement, but only to' define some of its terms, such parts of the actual contract as are not embraced within its scope may be established by parol evidence. * * * ”
The telegram which was sent here was not intended to set forth all of the terms of the agreement. It was merely intended to advise the other party that the contract, as already offered, would be accepted.
Surely then we may consider oral evidence as to the terms and conditions of t)he contract. And when we consider that evidence, we have no difficulty in arriving at the conclusion that our Brother below was not manifestly in error.
We have no doubt at all that the contract contemplated that the appearance of plaintiff and his partner in the establishment of defendant would be exclusive, and that they would not be continually running back and forth between the establishment of defendant and that of a nearby rival.
Since we are of the opinion that the contract actually contemplated that plaintiff would not, during its term, appear in any rival establishment, it is not necessary that we determine whether custom would have written such a clause into sucia a contract had there been no actual agreement on that point.
We are not told in detail just what scenes were contemplated in the performance of “Satan and the Virgin” — whether they were amorous, sentimental or otherwise, but it does not require the exercise of judicial notice or knowledge for us, to some extent, to appreciate the nature of such a performance. We do find that in order for plaintiff and his partner to keep both engagements, it was necessary for them to rush rather hurriedly from one establishment to the other. It must have been shocking to the aesthetic sensibilities of the patrons of defendant’s establishment to see the alluring virgin, when on the verge of succumbing to» the amorous advances of the enamored Satan, at this climactic moment, suddenly free herself from his em-passioned embrace and rush around the corner to the rival place of business and there engage in the performance of a hula dance to the accompaniment of a tap dance by the disappointed Satan. Such patrons surely must have realized that the hurried departure of the virgin from the first establishment did not result from the unexpected transcendent triumph of virtue but rather from a realization that the pay envelope from the second establishment would not be forthcoming unless the hula dance should be performed at the appointed time.
We feel that defendant was justified in refusing to allow plaintiff to continue to perform under the contract and that, therefore, the plaintiff is entitled to receive only so much as was earned in appearing in the four performances on the first night. Under the contract he was to receive $50 per week for appearing four times a night for seven nights. There would have been twenty-eight appearances for $50. On this basis plaintiff should receive $7.15.
Considering the circumstances, we conclude that plaintiff should bear the costs in the lower court and that 'defendant should bear the costs in this Court.
Accordingly, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiff and against defendant in the full sum of $7.15, with interest from judicial demand; plaintiff to pay costs in the First City Court and defendant to pay the costs of appeal.
Reversed.