(56 South. 1026.)

No. 18,621.

BAUTOVICH v. GREAT SOUTHERN LUM-
BER CO.

(Nov. 27, 1911.    Rehearing Denied Jan. 2,
1912.)

*(Syllabus by the Court.)*

1. SALES (§ 275*)—CONTRACT—WARRANTY OF QUANTITY.

An agreement to sell and deliver all charcoal manufactured at defendant's plant, within a certain time, "estimated at two or more cars per week," does not imply a warranty of quantity by defendant, but only an estimate of the probable amount, in reference to which good faith is all that is required of the party making it.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 744, 748; Dec. Dig. § 275.*]

2. SALES (§ 411*)—BREACH OF CONTRACT—PE-
TITION.

Where, in a suit for damages on such a contract, the petition merely alleges a breach by nondelivery of the full estimated amount, *held*, that the petition discloses no cause of action.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1161–1164; Dec. Dig. § 411.*]

*(Additional Syllabus by Editorial Staff.)*

3. WORDS AND PHRASES—"ESTIMATE."

The word "estimate" precludes accuracy, and its ordinary meaning is to calculate roughly or to form an opinion from imperfect data, and the word "estimate" has no more certainty than the term "about" or "more or less" (citing Words and Phrases, vol. 3, p. 2493).

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Thomas M. Burns, Judge.

Action by F. C. Bautovich against the Great Southern Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

Miller & McDougall, for appellant. Ott, Johnson & Ott, for appellee.

LAND, J. Plaintiff sued for damages in the sum of $2,640 for loss of profits alleged to have been sustained by the failure and refusal of the defendant to ship charcoal, during the months of January, February, and March, under a written contract, as follows, viz.:

"Bogalusa, La., January 2, 1910.
"Agreement between F. C. Bautovich of New Orleans, La., and the Great Southern Lumber Company of Bogalusa, La., for the months of January, February and March, 1910.
"The latter agrees to deliver all charcoal made by them at Bogalusa, estimated at two or more cars per week, weather permitting, at $122.00 per 40 foot box car, * * * f. o. b. Bogalusa.
"It further agrees to load cars full at Bogalusa and to furnish a clean, dry charcoal, of equal grade as shipped at present by said company.
"Mr. Bautovich agrees to take all the charcoal made by this company, and to pay cash weekly for cars received up to date."

Plaintiff alleged that he had received only four cars of charcoal under the terms of the contract, and had lost a profit of $120 per car, on 22 cars of charcoal, and that he had repeatedly put the defendant in default, by written demands for the shipment and delivery of charcoal pursuant to the terms of the contract.

Defendant filed exception of no cause of action, which was heard and overruled.

Defendant then answered that it sold and

delivered to the plaintiff all charcoal made by it at Bogalusa, after the date of the contract, and that said charcoal was all it was able to manufacture during the three months mentioned in the agreement.

The case was tried, and judgment was rendered in favor of the plaintiff, for $1,680, with legal interest thereon from the date of the decree, and costs of suit. Defendant has appealed.

The thing sold was all the charcoal that might be made by the defendant at Bogalusa, during the months of January, February, and March, 1910, and the plaintiff agreed to take all the charcoal that might be made by the plaintiff during said period. The charcoal was to be manufactured after the date of the contract, and it was estimated that the plaintiff would make two or more car loads per week.

[1, 2] The exception of no cause of action restricts the inquiry to a construction of the written agreement, the words of which are not ambiguous. On the face of the instrument, the defendant did not agree to sell and deliver any definite number of car loads of charcoal. As stated above, the estimate refers to the output of the defendant's charcoal plant. It is not even alleged in the petition that the defendant could have made more charcoal than was delivered to plaintiff, and there is no averment of fraud or bad faith.

In Gwillim v. Daniel, 2 Crompton, M. & R. 61, the contract declared on was:

"That the defendant agreed to sell, and the plaintiff agreed to purchase, all the naphtha which defendant might make from the first day of June then next, for and during the term of two years, say from 1,000 to 1,200 gallons per month."

In that case plaintiff alleged:

"That although he has received 3,000 gallons, the defendant ought under the agreement to have made naphtha at the rate of from 1,000 to 1,200 gallons per month, which would have amounted to a much larger quantity than the 3,000 gallons; that is to say, 10,000."

And he assigned as a breach of the contract the not delivering to him the difference between the 3,000 and the 10,000 gallons. Lord Abinger, C. B., construed the contract to mean that the defendant undertook to sell to the plaintiff all the naphtha he might make in his works during the next two years, and held that the declaration was insufficient in not averring that in the ordinary course of his manufacture the defendant should have produced a larger quantity of naphtha than 3,000 gallons, or that the defendant had fraudulently misrepresented the capacity of his plant. Inter alia, the court said:

"The words 'say from 1,000 to 1,200 gallons' are not shown to mean that the defendant undertook, at all events, that the quantity manufactured should amount to so much."

And in conclusion that:

"It is consistent with the breach assigned in the declaration that the works were wholly incapable of producing more than the quantity actually delivered."

In Brawley v. The United States, 96 U. S. 168, 24 L. Ed. 622, the ruling in Gwillim v. Daniel, supra, was declared to be a correct exposition of the law applicable to contracts to sell and deliver goods that may be manufactured by the vendor in a certain establishment, or otherwise identified by reference to independent circumstances; "and the quantity is named with the qualification of 'about' or 'more or less,'" or words of like import. In this connection, the court said:

"The naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making."

[3] In the case at bar, the contract shows on its face that the quantity was "estimated at two or more cars per week." The word "estimate" precludes accuracy, and its ordinary meaning is to calculate roughly or to form an opinion from imperfect data. Words and Phrases, vol. 3, p. 2493. The word "estimate" has no more certainty than the terms "about" or "more or less."

We therefore are of opinion that the exception should have been sustained.

For the reasons stated, it is ordered that the judgment below be reversed; and it is now ordered that the exception of no cause of action filed by the defendant be sustained, and that plaintiff's suit be dismissed, with costs in both courts.