### YUMA COUNTY WATER USERS' ASS'N et al. v. SCHLECHT et al.

(Circuit Court of Appeals, Ninth Circuit. November 7, 1921.)

No. 3593.

1. Waters and water courses ⬁222—Secretary of Interior's notice of charges based on "estimated cost" of irrigation project sufficient under Reclamation Act.

A public notice by the Secretary of the Interior, specifying lands for which water would be furnished under an irrigation project, the classes of charges therefor, and the construction charge as $75 per acre of irrigable land, payable in installments as enumerated, was in accord with Reclamation Act June 17, 1902, § 4 (Comp. St. § 4703) as amended, and Act Aug. 13, 1914 (Comp. St. §§ 4713a–4714f), authorizing the Secretary to let contracts for construction work, and thereupon to give public notice of the

⬁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lands irrigable thereunder, of the charges per acre and the number of annual installments, to be determined with a view of returning to the reclamation fund the "estimated cost" of the project, by which is meant, not the actual, exact final sums paid for construction, but such sums as it is believed after careful computation will cover the expenses directly and fairly connected with the construction of the project.

[Ed. Note.—For other definitions, see Words and Phrases, Estimated Cost.]

2. **Waters and water courses ☜222—Correspondence between Secretary of Interior and Reclamation officials as to irrigation project estimates before contracts for payment of cost not binding, as public notice, on government.**

Under Reclamation Act June 17, 1902, § 4 (Comp. St. § 4703), as amended, and Act Aug. 13, 1914 (Comp. St. §§ 4713a–4714f), requiring the determination of charges for the construction and maintenance of irrigation projects with a view of returning to the reclamation fund the estimated cost of the project, correspondence between the Secretary of the Interior and officials of the Reclamation Service relative to estimates of the cost prior to the date of a contract between the landowners and the United States, for the payment thereof cannot be regarded as a public notice to the former, nor as binding on the government.

3. **Waters and water courses ☜222—Though Secretary of Interior's estimate of cost of irrigation project was materially lower than later estimate, court will not interfere, in absence of fraud.**

Though there was a substantial and material difference between preliminary engineering estimates of the cost of an irrigation project and a later estimate, the courts will not interfere, in the absence of some substantial showing that the action of the Secretary of the Interior in publishing notice of charges based on such original estimates was fraudulent or arbitrary or so erroneous as to justify an inference of illegality or wrongdoing, especially where the increased cost was due to unexpected physical difficulties, higher wages, change of plans, increased mileage of canals, etc.

4. **Waters and water courses ☜222—That cost of irrigation project was greater than expected held no ground for equitable relief, in view of contract to pay amount to be determined.**

Where a contract between the United States and a water users' association provided that the latter should promptly collect such charges as should be apportioned to its shareholders, the fact that the cost was greater than expected cannot be urged as a ground for equitable relief.

5. **Waters and water courses ☜222—Landowners not entitled to equitable relief from payment of increased charges on ground system not completed when suit filed, where public notice and Secretary of Interior's letters to them based on his determination project was completed.**

Where the Secretary of the Interior in the exercise of his discretion withdrew certain lands from an irrigation project and confined it to the area described in the public notice to the landowners affected, the latter, who contracted to pay for that part of the cost which should be apportioned to them by the Secretary could not restrain the local reclamation officers from turning off the water for failure to pay an assessment in excess of the original estimate and of the actual value of work to be constructed, on the ground the system was not completed when the suit was filed.

Appeal from the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Bill for injunction by the Yuma County Water Users' Association and others against W. W. Schlecht and another. From a decree dismissing the bill, complainants appeal. Affirmed.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thos. D. Molloy, of Yuma, Ariz., for appellants.

Thomas A. Flynn, U. S. Atty., of Phœnix, Ariz., and Oliver P. Morton, Sp. Asst. Atty. Gen., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from a decree dismissing a bill asking an injunction against appellees, local officers of the Yuma project of the United States Reclamation Service. The Yuma County Water Users' Association is an Arizona corporation, and other appellants are members of the water users' association and landowners within the district over which the association exercises authority.

The complaint alleges: That in May, 1904, the Secretary of the Interior contracted for the construction of the Laguna dam across the Colorado river, and determined and estimated the cost of the construction of the Yuma project, and gave public notice of the charges which should be made per acre upon all the lands within the irrigation district and Yuma project to be developed for the construction cost of the project exclusive of the cost of operation and maintenance; that $35.28 was determined upon with a view of returning to the fund created by the Reclamation Act the estimated cost of the project; that the Secretary set aside $3,000,000 from the fund furnished by the Reclamation Act for the construction of the Yuma project, and gave public notice of the lands irrigable under the Yuma project, as well as the number of annual installments within which charges should be paid and the time when payment should commence; that the Yuma County Water Users' Association was organized under the direction of the Secretary of the Interior for the purpose of securing the aid of the United States in the construction of the irrigation project, and for the collection and payment to the United States of moneys which might be due for the use of water from any irrigation works, to be constructed under the provisions of the Reclamation Act under a plan approved by the Secretary and prescribed by the articles of incorporation of the water users' association. The shareholders in the association pledged their respective tracts of land as security for the payment of the estimated costs and charges of any irrigation project which might be constructed by the United States for the irrigation of the lands in the district, and it is alleged that in May, 1904, relying upon the estimate of $35.28 and on what was said by certain officials of the Reclamation Service, that the Yuma project would be completed at the estimated cost and within two years from the commencement of the work, plaintiffs were induced to mortgage their lands and to become shareholders; that on May 31, 1906, the association for itself and the shareholders agreed with the United States through the Secretary of the Interior that the estimated cost of the Yuma project should be divided into not less than 10 annual payments; that the association would collect from its shareholders the amount of the cost of the project. It is alleged that the corporation performed, but that, notwithstanding the estimate and determination of the Secretary, and the promises by the engineers of the United States, and notwithstanding the agreement of 1906, the project has

not been completed, and large portions of tracts have been left in desert condition; that defendants, with the intention of compelling the shareholders in the Yuma County Water Users' Association to make a contract whereby they would agree to pay into the reclamation fund for the cost of expense of the Yuma project, exclusive of the cost of operation and maintenance, $75 per acre, threaten that unless they make such payment the defendants will shut off the water; that the contract proposed is inequitable and unconscionable, in that it will compel each signer to agree to pay $75 per acre for each acre of irrigable land, notwithstanding the estimates of the Secretary, and that such amount is greatly in excess of the actual value of work constructed or to be constructed in the Yuma project.

The principal points upon which decision must turn relate to the public notice required to be issued by the Secretary of the Interior, and the matter which it should contain, especially as to the amount of the cost. The formal notice dated April 6, 1917, was issued pursuant to section 4 of the Reclamation Act of June 17, 1902 (32 Stat. 388 [Comp. St. § 4703]), and the amendments thereto, and the extension act of August 13, 1914 (38 Stat. 686 [Comp. St. §§ 4713a–4714f]). It specified certain lands for which water would be furnished under the project; gave notice that all water right applications must be made to the project manager; specified the classes of charges for water rights, which included a charge against each irrigable acre "to cover the cost of construction of the irrigation system called the construction charge," and an annual charge against each irrigable acre "to cover the cost of operation and maintenance of the system called the operation and maintenance charge;" and specified "the construction charge for the unit as $75 per acre of irrigable land" payable in installments which are enumerated.

Section 4 of the Reclamation Act gives authority to the Secretary of the Interior, after determining that an irrigation project is practicable, to cause to be let contracts for the construction work in such portions or sections as it may be practicable to construct and complete as parts of the whole project, provided funds are available in the reclamation fund, and thereupon to give public notice of the lands irrigable under the project, of the charges which shall be made per acre upon entries, and upon lands in private ownership capable of being irrigated and the number of annual installments in which the charges shall be paid. The section continues:

"The said charges shall be determined with a view of returning to the reclamation fund the estimated cost of * * * the project, and shall be apportioned equitably: Provided," etc.

[1] The notice given was in clear accord with the statute, and presumably was based upon data and information then at hand. By estimated cost is not meant the actual exact final sums paid for construction, but rather such sums as it is believed after careful computations will cover the expenses and outlay directly and fairly connected with the construction of the project. The statute contemplates that contracts shall be let prior to the giving of the public notice, and the

obvious reason for this is to give to the Secretary of the Interior an adequate knowledge upon which to make an estimate.

[2, 3] Correspondence such as there was in the present case between the Secretary and officials of the Reclamation Service, wherein estimates are considered and discussed in laying out the work prior to the date of the contract between the landowners and the United States, cannot be regarded as a public notice, nor as in any way binding upon the government. Utah Light & Power Co. v. United States, 243 U. S. 389, 37 Sup. Ct. 387, 61 L. Ed. 791. As the whole theory of the statute is that there shall be a return to the reclamation fund of the estimated cost of constructing the project, manifestly the United States should not be bound by letters or statements published antecedent to plain agreements made pursuant to the statute. It is unfortunate that in the Yuma project there was a substantial and material difference between preliminary engineering estimates and the estimate which was made at a later time; but in the absence of some substantial showing that the action of the Secretary was fraudulent or arbitrary or so erroneous as to justify an inference of illegality or wrongdoing, it is not within the province of the courts to interfere. Noble v. Union R. Logging Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; Swigart v. Baker, 229 U. S. 187, 33 Sup. Ct. 645, 57 L. Ed. 1143; N. Y. Canal Co. v. Bond (C. C. A.) 265 Fed. 228.

It is not out of place to say that the increased cost as explained by Chief Engineer Davis of the Reclamation Service was because of the unexpected difficulty in managing the rivers, rapid increase in price of labor, change of engineering plans by substituting a siphon under the Colorado for one under the Gila river, increasing mileage of canals, and other important modifications of originally conceived plans.

[4] Moreover, the contract between the United States by the Secretary of the Interior and the Water Users' Association provides that the association will promptly collect or require payment for that part of the cost of the works which shall be apportioned by the Secretary to its shareholders; also that payments for the water rights would be made and enforced by proper means. The fact, therefore, that the cost is greater than was expected cannot be urged now as a ground for equitable relief. Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106.

[5] There is no real importance to the point that the system was not completed when this suit was filed. The public notice and the letters of the Secretary of the Interior to the association are based upon his determination that the project was completed. His determination was based upon investigation into facts, and found support in the opinion of an experienced engineer, and we think that in withdrawing certain lands and confining the project to the area described in the public notice the Secretary but exercised discretion and power vested in him under the law.

We cannot find that appellants have made any showing which entitles them to relief.

The decree is affirmed.