INDIANA GAS & WATER COMPANY, INC. *v.* WILLIAMS.

[No. 19,203.   Filed May 24, 1961.]

*Charles W. Cooper, Cooper, Cooper, Cooper & Cox,*

of counsel, of Madison, *Alan W. Boyd, Jerry P. Belknap* and *Barnes, Hickam, Pantzer & Boyd,* of counsel, all of Indianapolis, for appellant.

*Howard J. Snyder,* of Jeffersonville and *Joseph M. McDaniel,* of New Albany, for appellee.

PFAFF, C. J.—This was an action brought in the Clark Circuit Court by appellee against appellant for damages for an alleged breach of its obligations under four separate but similar contracts. These contracts covered the extension by appellant, a public utility rendering water utility services, of water mains into subdivisions developed by appellee.

The issues were formed by appellee's complaint in four paragraphs and the appellant's answer thereto. By proper affidavit this cause was venued to the Jefferson Circuit Court. Trial was had to the court without the intervention of a jury. The court entered its special findings of fact and conclusion of law, upon request by appellant, finding in favor of appellee Williams in the sum of $1,575.32. Judgment was rendered accordingly. Appellant filed a motion for a new trial which was overruled. The only error assigned by appellant is the action of the trial court in overruling its motion for a new trial.

The contracts in question here between appellant and appellee were prepared by appellant on a printed form. They were for the extension of its existing water mains at Clarksville, Indiana, to serve a new platted subdivision being developed by appellee and each of these contracts was approved by the Public Service Commission of Indiana. They provided in essence that the appellee (plaintiff below) would deposit with the appellant (defendant below) the estimated cost of making these water main extensions. They contained a further pro-

vision that whenever a new customer is connected for water service to the extended main built under the contract, appellant as the "Utility," must make a refund to appellee as the "Builder" in the amount of the difference between the estimated total revenue to be received from the new customer for a period of six years from the date of service connection, less the cost of the service connection and meters required to make the service available. The appellee contends that the appellant in attempting to arrive at the estimated total revenue, as provided for under these contracts, used a minimum figure of $1.50 per month and that this sum per month per user does not represent a fair figure in determining the estimated total revenue which the appellant will receive from supplying water to the customers served in the area covered by these contracts.

The appellee further contends that the appellant has collected an average of $2.25 per month from each user and that the proper way to arrive at the estimated revenue is to use the average bill of each user instead of the minimum bill. The appellant contends that the only information available at the time of its revenue estimates and refund payments were made was that the houses in appellee's subdivisions were average homes on smaller-than-average lots and all single family dwellings. That the average monthly water consumption of residential customers on the water system serving appellee's subdivisions was only 3600 gallons per month or less than the 3750 gallons per month available under appellant's effective monthly minimum charge of $1.50 per month. That 65% of all appellant's water customers pay only the monthly minimum charge. That while the monthly minimum is the lowest charge payable, appellant had no assurance at the time the

refund payment was made that the newly connected customers could actually pay for water service at that location for a full six years in the future. That because of these facts, the estimated revenues for refund purposes were made on the basis of its monthly minimum charge. That the measure of appellant's obligation in making revenue estimates for refund purposes is that the estimates be made in good faith, and that there was no finding that appellant's refund estimates were not made in good faith. That the appellant's refund estimates were made in good faith and were fair estimates at the time they were made.

The trial court in its findings of fact, Finding No. 7, stated "that the defendant had available to it records, experience, and information from which it could have made a fair estimate of the refunds to be paid the plaintiff but instead of actually making a fair estimate of the refunds to be paid the plaintiff, which would have resulted in an estimate sufficient to reimburse the plaintiff in full, substituted its minimum monthly charge for such 'estimated total revenue.' " Thus the primary question presented in this appeal involves the proper interpretation to be placed upon the provision in the contracts which read "estimated total revenue to be received from the new customer."

The primary purpose in the construction of a contract is to ascertain and give effect to the mutual intention of the parties if it can be done consistently with legal principles. See *The Illinois Pipe Line Co.* v. *Brosius* (1939), 106 Ind. App. 390, 20 N. E. 2d 195; *Warrum* v. *White* (1909), 171 Ind. 574, 86 N. E. 959. However, this intention of the parties must be determined from the language employed in the contract where there is no ambiguity or mistake, and where there has been no fraud or deception prac-

ticed to induce execution from such language alone. *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 175 N. E. 132. Another familiar rule in the interpretation of contracts is that words employed will be given their plain ordinary and popularly accepted meaning in the absence of anything to show that they were used in a different sense. *Haworth* v. *Hubbard* (1943), 220 Ind. 611, 44 N. E. 2d 967; *Smith* v. *Sparks Milling Company* (1942), 219 Ind. 576, 39 N. E. 2d 125.

As stated previously the primary question involved is the interpretation of the estimated total revenue to be received from the customer for the six year period. The word "estimated" is the key word. This word is defined in 31 C. J. S., p. 184, as meaning computed. The general rule is that the word following a description of the subject indicates that the statement of quantity is a matter of description not of warranty implying merely the good faith of the party making it.

In 12 Am. Jur. §257, p. 803, it states that the use of the words "estimate", "estimated" or "estimation" without reference to a quantity or amount ordinarily indicates that the quantity or amount is not attempted to be stated with mathematical exactness, and, hence, the instrument must not be interpreted as if it contained an exact statement of the quantity or amount. "Estimate" as defined by Webster's New International Dictionary, 1940, p. 875, is to judge and form an opinion of the value from imperfect data— to fix the worth of roughly or in a general way.

In the case of *Bautowich* v. *Great Southern Lumber Co.* (1912), 129 La. 857, 56 So. 1026, it was held that the word "estimate" precludes accuracy and its ordinary meaning is to calculate roughly or to form an opinion from imperfect data, and the word "estimate"

has no more certainty than the term "about" or "more or less." In the case of *Yuma County Water Users Assn.* v. *Schlecht* (1921), 275 Fed. 885, the court held that the term "by estimated cost" is not meant the actual exact final sums paid for construction but rather such sums as it is believed after careful computation will cover the expenses directly and fairly connected with the contruction of the project. This case further held that if the action of the Secretary based on a cost estimate was not fraudulent or arbitrary or so erroneous as to justify an inference of illegality or wrongdoing, it is not within the province of the courts to interfere.

Thus it appears that the plain, ordinary and popularly accepted meaning of the word "estimate" is to calculate roughly or to form an opinion from imperfect data and the cases cited further hold that, as long as this is accomplished in good faith, it is not within the province of the courts to interfere.

In this case there was uncontradicted evidence introduced in the trial court to the effect that the appellant had calculated the revenue to be received from the users for the next six years and that this calculation was from imperfect data, namely, the minimum monthly bill for each user. The contracts provided that the refund payments were required to be made at the time each connection was made. In view of this provision in the contracts, the revenue estimate portion of the refund preceded actual experience as to the new customer's water consumption and payments and thus we are of the opinion that imperfect data was all the appellant had to go on when it had to make its revenue estimates and refunds. The appellee himself testified in the court below that he did not remember whether any-

thing was said at the time these contracts in question were executed about how the estimate would be determined. There was also uncontradicted evidence before the trial court to the effect that the reason the appellant used the minimum bill in calculating the estimated revenue was that about 65% of all its water users were minimum users, and that for three years immediately preceding these contracts in question the average residential water customers in the locality in question were only using approximately 3600 gallons of water per month which was 150 gallons less a month than they were entitled to use and still pay only the minimum rate.

The transcript of this action does not reflect any evidence which would show a lack of good faith on the appellant's part in calculating this estimated revenue. This action was for damages alleged to be due on account of the alleged breach by appellant of its obligations under these four separate contracts. A party is guilty of a breach of contract when either he places himself in such a position that it is beyond his power to perform his part of the contract or if he fails to perform all the obligations which he agreed to undertake. *Plunkett* v. *Black* (1889), 117 Ind. 14, 19 N. E. 537.

The appellant, under the terms of these contracts, was required whenever a new customer was connected for water service to the extended main to make a refund to the appellee in the amount of the difference between the estimated total revenue to be received from the new customer for a period of six years from the date of service connection less the cost of service connections and meters required to furnish the service. The plain ordinary and popularly accepted meaning of the word "estimated" as we have previously said is to calculate

roughly or to form an opinion from imperfect data. We are of the opinion that the evidence in this case shows that the appellant did calculate roughly the total revenue to be received. This calculation was from imperfect data and was the only data available at the time as the contract further required the refund to be made when the new customer was connected for water service.

If the appellee wanted to receive the refund based on the actual revenue received by appellant from these users instead of on the estimated revenue, then he should have insisted that these contracts be changed to read actual total revenue instead of estimated total revenue before he accepted and entered into the contracts. The courts have no right to make a contract for the parties and the rule of liberal construction does not justify the creation of a contract for the parties which they did not make themselves or the imposition upon one party to a contract of an obligation not assumed by its terms. *Jenkins* v. *King* (1946), 224 Ind. 164, 65 N. E. 2d 121; *International Shoe Co.* v. *Lacy* (1944), 114 Ind. App. 641, 53 N. E. 2d 636; *Smith* v. *Mercer* (1948), 118 Ind. App. 575, 79 N. E. 2d 772.

The fact that the evidence showed the actual revenues received after the estimates were made were considerably more than the estimate does not mean that the estimate was improper since the contract required the estimate to be made immediately upon connection and before information as to actual revenue was available to appellant.

We are of the opinion that the trial court did in fact impose an obligation upon the appellant which

was not assumed by the terms of the contracts and thus the trial court erroneously interpreted the contract.

In view of our determination, we do not consider it necessary to go into appellant's other contention that the amounts paid by it and received by appellee constituted full payment.

For the reasons given herein, the trial court erred in overruling appellant's motion for a new trial.

Judgment reversed with instructions to the lower court to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

Bierly, Gonas and Kelley, JJ., concur.

This case was argued March 23, 1960, and assigned to the author of this opinion after assuming office January 1, 1961.

NOTE.—Reported in 175 N. E. 2d 31.