EAST SIDE MERCURY SALES, INC. *v.* CHARLIE STUART, INC.

[No. 19,436. Filed January 15, 1962. Rehearing denied March 6, 1962. Transfer denied April 26, 1963.]

*John G. Rauch, John G. Rauch, Jr., John Wood,* and *Rauch, Chase & Kitchen,* of counsel, all of Indianapolis, for appellant.

*Carl E. Stilwell, Robert Life* and *Stilwell, Hacke-meyer & Life,* of counsel, of Indianapolis, for appellee.

PFAFF, J.—This action was instituted by the appellee to recover certain monthly payments, together with interest thereon, alleged to be due appellee under the terms of a certain written assignment by appellee to appellant of a lease covering certain premises in the city of Indianapolis, Indiana, referred to :as 2217 East Washington Street.

The issues were formed by appellee's complaint and appellant's answer thereto, which also set up certain affirmative defenses, and appellee's reply to the affirmative matter appearing in appellant's said answer.

The case was tried by the court without a jury. On June 2, 1959, the court decided the issues in favor of the appellee and entered judgment in its favor in the sum of $4,244.03, together with costs. The length of time for which the court allowed the $275.00 monthly payment was 15 months, being apparently the period from February 15, 1957, to and including the month of April, 1958.

The appellant filed its motion for a new trial on the grounds that the decision of the court is contrary to law and is not sustained by sufficient evidence. The motion for a new trial was overruled and the appellant's assignment of error is that the court erred in overruling the same.

The evidence most favorable to appellee reveals that appellee, on April 10, 1953, leased the premises located at 2217 East Washington Street, Indianapolis, Indiana, from its owners James C. and Nell M. Scanlan, husband and wife. Said lease, as set out in appellant's brief, reads in part as follows:

"This lease, dated this 10th day of April, 1953, by and between James C. Scanlan and Nell M. Scanlan, husband and wife the Lessor, and Charlie Stuart, Inc., an Indiana corporation, the Lessee,

"WITNESSETH:

"The Lessor hereby leases and demises to the Lessee the following described real estate, to-wit:

'Lot Sixteen (16) in Johnson and Hogshire's East Washington Street Addition to the City of Indianapolis, as per plat thereof, recorded in Plat Book 8, page 173 in the office of the Recorder of Marion County, Indiana.'

to be used for the sale and general repair of new and used automobiles and trucks, and for general office and storeroom use, for a term of two (2) years beginning April 15, 1953, and expiring April 14, 1955, at the rental of Twenty-four Thousand Dollars ($24,000.00) which the Lessee agrees to pay as follows: One Thousand Dollars ($1,000.00) per month beginning April 15, 1953, and on the 15th day of each month thereafter during the term, in advance, with the exception that Lessee shall pay the sum of Three Thousand Dollars ($3,000.00) at the time of execution of this lease, the receipt of which is hereby acknowledged by Lessor, in payment of the rent for the last three (3) months of this lease.

"Lessee shall have the option to renew this lease upon the same terms and conditions as in this lease provided for an additional term of three (3) years, to commence at the expiration of the term of this lease on April 14, 1955, and to continue to and including April 14, 1958. Provided Lessee shall elect to renew this lease, Lessor shall be given ninety (90) days prior written notice of Lessee's intention to renew, and the Three Thousand Dollars ($3,000.00) paid by Lessee to Lessor to apply upon the last three (3) months of the preceding term then be applied upon the last three (3) months of the renewal term.

"The Lessor and Lessee further covenant with each other as follows:

"Lessor represents and warrants to Lessee that The Pennsylvania Railroad Company or Grocers

Warehouse, Inc., will enter into a sublease with Lessee, granting to Lessee, the right to use a parcel of ground located east and adjacent to the real estate herein leased, containing 13,073 square feet, more or less, as shown in yellow outline on blue print of the Pennsylvania Railroad Company, Plan No. 31307 (Division Engineer) dated April 25, 1952, and attached to and made a part of a certain lease dated June 4, 1952, between The Pennsylvania Railroad Company, as Lessor, and Grocers Warehouse, Inc., as Lessee, same to be used for driveway purposes, and for transportation, storage and sale of new and used automobiles, at an annual rental of One Hundred Dollars ($100.00) per year, which shall be paid by Lessor, or if paid by Lessee, same may be deducted from rent due Lessor under this lease. Provided sublease shall not be obtained, or if obtained, shall be cancelled during the term of this lease or any renewal thereof, this lease, at the option of Lessee, may be cancelled and terminated, any rent paid in advance shall be refunded by Lessor.

"Lessee may sublet or assign this lease, but shall remain primarily liable to perform all covenants and conditions hereof and to guarantee such performance by its assignee or subtenant.

"It is agreed that a holding over beyond the expiration of the term herein specified shall operate as an extension of this lease from month to month only.

"All notices to be given hereunder by either party shall be in writing and given by personal delivery to the Lessor or the Lessee, or shall be sent by registered mail addressed to the party giving such notice, and notice given as aforesaid shall be a sufficient service thereof and shall be deemed given as of the date when deposited in any post office or in any post office box regularly maintained by the Federal Government."

Said original lease contained a provision whereby the lessors stipulated that the Pennsylvania Railroad Company or Grocers Warehouse, Inc., would enter into a sublease with appellee granting the right

to use a parcel of ground located east and adjacent to the said real estate leased by appellee. There was a further provision therein that if said sublease shall not be obtained, or if obtained, should be cancelled during the term of the lease or any renewal thereof, the lease, at the option of appellee, could be cancelled and terminated and any rent paid in advance shall be refunded by lessors. The appellee entered into possession of said property pursuant to said lease and operated an automobile dealership business at that location. On April 15, 1953, appellee entered into an agreement of sublease with Grocers Warehouse, Inc., respecting said tract of land adjacent to and immediately to the east of the premises leased by appellee. This adjacent tract of land is commonly known as Koweba Lane. This sublease granted to the appellee the right to use that portion of Koweba Lane, not used for a driverway, for the purpose of transportation, storage, and sale of new and used automobiles.

The evidence further revealed that, in the early part of the year of 1956, appellee entered into negotiations with a Mr. Chet Cannaday and certain representatives of the Dealer Development Division of Ford Motor Company for the sale of appellee's Mercury dealership. The sale was to be made to a new corporation formed by Mr. Cannaday with capital to be provided by the Dealer Development Division of Ford Motors. This newly formed corporation became known as East Side Mercury Sales, Inc., the appellant herein.

On March 15, 1956, appellee and appellant, by its President, the said Mr. Cannaday, entered into a written agreement which provided for the purchase by appellant of all the assets of appellee's automobile

dealership. A condition set out in this agreement was that appellant was to receive leases or valid assignments of leases for the premises at 2217 East Washington Street and the adjacent parcel of land called Koweba Lane. This agreement contained a further provision whereby the appellant agreed to pay the rent provided in appellee's said lease direct to appellee's said lessors, and appellant therein also agreed to pay the appellee $275.00 per month. It was further provided, however, that in the event the lease on the Koweba Lane premises was cancelled before March 15, 1958, and if appellant should exercise the option to cancel its leasehold to the premises at 2217 East Washington Street, as provided in said assigned original lease, then appellant would be relieved of the obligation to make any further monthly payments of $275.00 to appellee.

On the same day as the execution of the above agreement, the appellant, appellee and the lessors of the premises at 2217 East Washington Street, the said Mr. and Mrs. James Scanlan, executed another written document entitled "Agreement and Acceptance of Assignment of Lease." This document contained the actual assignment by appellee of its said original lease to the premises at 2217 East Washington Street to the appellant and the Scanlan's consent to such assignment. In this document there was a provision, as in the prior agreement referred to above, whereby appellant agreed to pay to the original lessors (the Scanlans) the monthly rent, specified in the lease, until said lease is terminated at the expiration of its term or terminated sooner by the cancellation of the sublease on the adjacent property commonly known as Koweba Lane. There was also a provision, as in the prior agreement, that appellant would pay

the appellee $275.00 per month in consideration of appellee's assignment to appellant of its lease. However, in this agreement there was no provision that if the lease on the Koweba Lane premises was cancelled before March 15, 1958, appellant then would be relieved of its obligation to pay the monthly payment of $275.00 to the appellee. The specific language in the second agreement, in respect to appellant's obligation to make the monthly payments to the appellee, was as follows: "Such monthly payment shall be made by Mercury to Stuart each and every month *during the term of the lease hereby assigned until the expiration thereof as provided in said lease.*" (Our emphasis.)

The evidence further revealed that, on March 15, 1956, a second Agreement and Acceptance of Assignment of Lease was executed by appellant, appellee, and Grocers Warehouse, Inc., and the Pennsylvania Railroad Company whereby appellee's said lease of the adjacent property known as Koweba Lane was assigned to appellant.

The Pennsylvania Railroad Company, on October 4, 1956, cancelled and terminated by notice its lease of Koweba Lane to Grocers Warehouse, Inc. Thereafter, on October 9, 1956, said Grocers Warehouse, Inc., as sublessor, cancelled and terminated by notice the Koweba Lane lease which had been assigned to appellant by appellee. The cancellations were to become effective on November 3, 1956.

Said notices of termination by said Pennsylvania Railroad Company and Grocers Warehouse, Inc. read as follows:

"October 9, 1956

"East Side Mercury Sales, Inc.
2217 East Washington Street
Indianapolis, Indiana

"Gentlemen:

"The Pennsylvania Railroad Company, underlying lessor to the undersigned of a parcel of land of approximately 13,073 square feet for driveway purposes and for transportation, storage and sale of new and used automobiles, located in Ko-We-Ba Lane in Indianapolis, Indiana, which said parcel was leased by the undersigned to Charlie Stuart, Inc., by lease dated April 15, 1953, which said latter lease was assigned to you by agreement dated March 15, 1956, has terminated said underlying lease as of November 3, 1956.

"We enclose a copy of said notice of termination.

"You are, therefore, notified under the terms of said lease to Stuart assumed by you, that the Pennsylvania Railroad Company desires to repossess said premises, and the undersigned does hereby require you to leave the same and deliver possession thereof on or before November 3, 1956.

"GROCERS WAREHOUSE, INC.

"By /s/ A. C. Gisler, President

"Encl.
"POC-W-975

"October 4, 1956

"TO GROCERS WAREHOUSE, Inc.,
50 Ko-We-Ba Lane, Indianapolis 7, Indiana.

"By the terms of lease dated the 4th day of June, 1952, between THE PENNSYLVANIA RAILROAD COMPANY, Lessee of the works and property of The Philadelphia, Baltimore and Washington Railroad Company formerly The Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company and you, under which there was leased to you 13,073 square feet of land, more or less, for driveway purposes by those

authorized to use same and for transporation, storage and sale of new and used automobiles, situated in the City of Indianapolis, County of Marion, State of Indiana, as specifically described in said lease.

"THE PENNSYLVANIA RAILROAD COMPANY, Lessee has the right, upon giving you thirty (30) days notice, to terminate the said lease and repossess the above described premises at any time.

"You are therefore hereby notified that it is the desire of THE PENNSYLVANIA RAILROAD COMPANY, Lessee, to repossess the said premises, and it does hereby require you to leave the same and deliver possession thereof, upon the expiration of thirty (30) days from date hereof.

> "THE PENNSYLVANIA RAILROAD COMPANY, Lessee."

The evidence further reveals that, subsequent to the receipt by appellant of the above notice from Grocers Warehouse, Inc., there was a meeting between appellant's president, Mr. Cannady, a Mr. Don Kempster, an employee of the Mercury Division of Ford Motor Car Company, said lessor, Mr. Scanlan, and the Pennsylvania Railroad's representative, a Mr. Christy Magruder. Mr. Magruder told Mr. Cannady and Mr. Kempster that the unloading of cars by transport, blocking the driveway, and storing cars on the driveway must be discontinued. The latter agreed that they would discontinue the acts objected to, and Mr. Magruder told them that they had nothing to worry about. The evidence shows that appellant did not discontinue this conduct until after receipt of a second cancellation letter from the Pennsylvania Railroad. This second cancellation notice was dated February 4, 1957, and this letter notified appellant to immediately discontinue all further use of Koweba Lane. Then, on February 11, 1957, appellant exercised its

option under said lease by sending a written notice to the said Scanlans, a copy of which was sent to appellee, terminating the lease. This action by appellant was taken pursuant to said provision in the original assigned lease granting an option to the lessee to terminate the lease in the event the Koweba Lane lease was cancelled or terminated during the term of said lease. The appellant's notice stated that the termination of the said Scanlan lease was to be effective immediately upon the sending of such notice.

The appellant, after exercising its said option to terminate the Scanlan lease, continued in the possession of the Scanlan property on a month-to-month basis, with the consent of the Scanlans, while it liquidated its business, a period of approximately three months. The appellant did not make use of or occupy in any way the Koweba Lane property during said three months. The appellant declined to pay to the appellee any of the $275.00 monthly installments after February 14, 1957.

The appellant contends that to determine the intention of the parties as to the monthly payments to be paid by appellant to appellee, the buy and sell agreement and the assignment should be construed together and in harmony with each other. This court in the case of *Stair* v. *Oswalt* (1951), 121 Ind. App. 382, 387, 97 N. E. 2d 375, stated: "Where two instruments are executed as parts of a single transaction and pertain to the same matter, they must be construed together in order to ascertain the intention of the person executing such instruments. *Copeland* v. *Summers* (1894), 138 Ind. 219, 35 N. E. 514." See also 6 West's Indiana Law Encyclopedia, *Contracts*, §130 p. 182, Note 31, and cases there cited.

There is uncontroverted evidence in the record in the instant case that the two instruments, the buy and sell agreement and the assignment agreement were executed concurrently. It should also be noted that both instruments bear the same date as to notarization, namely, March 15, 1956. The two instruments on their face show that they relate to the same matter which is the assignment of the original lease on the premises located at 2217 East Washington Street, Indianapolis, Indiana. We must conclude, therefore, that the rule of law which is set out above is applicable to the factual situation of this case and that the two instruments, the buy and sell agreement and the assignment agreement, should be construed together.

The pertinent words in the assignment agreement which is the primary basis of the controversy in this cause of action, are as follows:

> "In consideration of the assignment hereby made by Stuart to Mercury, Mercury agrees to pay to Stuart the sum of Two Hundred Seventy-five Dollars ($275.00) per month on the fifteenth day of each month, commencing March 15, 1956, and Stuart hereby acknowledges receipt of the payment of the first installment of Two Hundred Seventy-five Dollars ($275.00) from Mercury. Such monthly payment shall be made by Mercury to Stuart each and every month during the term of the lease hereby assigned *until the expiration thereof as provided in said lease.*" (Emphasis supplied.)

Both the appellee and appellant go into detail in their briefs in attempting to explain what is meant by the words "expiration thereof as provided in said lease" and they also try to distinguish the difference in the meaning of the words "expiration" and "termination," as used in the several agreements. How-

ever, we perceive no ambiguity or conflict in the language "expiration thereof as provided in said lease." We are of the opinion that this language means simply that reference must be made to the original lease. We find that the original lease provided in part as follows:

> "Lessor represents and warrants to Lessee that The Pennsylvania Railroad Company or Grocers Warehouse, Inc. will enter into a sublease with Lessee, granting to Lessee, the right to use a parcel of ground located east and adjacent to the real estate herein leased, containing 13,073 square feet, more or less, as shown in yellow outline on blue print of The Pennsylvania Railroad Company, Plan No. 31307 (Division Engineer) dated April 25, 1952, and attached to and made a part of a certain lease dated June 4, 1952, between The Pennsylvania Railroad Company, as Lessor, and Grocers Warehouse, Inc. as Lessee same to be used for driveway purposes, and for transportation, storage and sale of new and used automobiles, at an annual rental of One Hundred Dollars ($100.00) per year, which shall be paid by Lessor, or if paid by Lessee, same may be deducted from rent due Lessor under this lease. Provided sublease shall not be obtained, or if obtained, shall be cancelled during the term of this lease or any renewal thereof, this lease, at the option of Lessee, *may be cancelled and terminated,* and any rent paid in advance shall be refunded by Lessor." (Our emphasis.)

Thus, the original lease expressly provided that said lease could be cancelled or terminated by the lessee if the sublease on the adjoining Koweba Lane property was cancelled. The appellee contends, however, that, even though the above provision is in the original lease, this only applies to *termination* of the lease while the word "expiration" contained in the assignment means expiration of the lease by the lapse of the term. We do not agree with the appellee's conten-

tion on this point. We have not found, and neither party has cited to us, any Indiana cases distinguishing the difference between the terms "expiration" and "termination." The Wyoming court in the case of *Marshall* v. *Rugg* (1896), 6 Wyo. 270, 45 Pac. 486, held that there are a number of ways in which a lease may be effectually ended as by the lapse of its term, by merger, by condemnation proceedings, by wrongful acts of the tenant, by the death of either party in a case of tenancy at will, etc.; and, when a tenancy was terminated before the expiration of the term of the lease, the lease is as effectually at an end as if it had expired by the lapse of the term; and, where a lease is surrendered before the end of the term by agreement, it is an expiration at the time of the surrender.

We are of the opinion that the language "expiration thereof as provided in said lease," as used in said assignment agreement, meant not only expiration by lapse of the term but included any termination of the lease as provided by its terms.

The appellee also contends that the judgment of the trial court must be affirmed in this case because there is evidence showing that the cancellation of the Koweba Lane lease was brought about by the acts of appellant. In support of this contention appellee relies only upon the testimony of Mr. Scanlan, part of which is set out in appellee's brief and the pertinent part of this testimony was as follows:

"After Mr. Magruder told Mr. Kempster and Mr. Cannady that the unloading of cars by transport and blocking the driveway must be discontinued and they agreed that they would and he said you have nothing to worry about."

It is evident that such testimony established no wrongful or other act of appellant which induced the cancellation of said Koweba Lane lease, and such evidence is not sufficient to even support an inference that appellant brought about the cancellation of said lease. We must conclude therefore that the evidence is insufficient to support appellee's contention that the cancellation of the lease on the Koweba Lane property was brought about by the acts of appellant.

We also think it is appropriate to point out that, even if the evidence had been sufficient to establish that it was appellant's acts that brought about the cancellation on the Koweba Lane premises, the lease provided that, if the sublease on the Koweba Lane premises shall not be obtained or if obtained shall be cancelled during the term of this lease or any renewal thereof, the lease at the option of lessee may be cancelled and terminated and any rent paid in advance shall be refunded by lessor. There was no language in this instrument which provided that such option to terminate the lease could not be exercised by the lessee if the cancellation on the Koweba Lane property was brought about in any certain manner or for any certain reason, It is fundamental in this state that the intention of the parties must be determined from the language employed in the contract where there is no ambiguity or mistake and where there has been no fraud or deception practiced to induce execution from such language alone. *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 175 N. E. 132. In the recent case of *Indiana Gas & Water* v. *Williams* (1961), 132 Ind. App. 8, 175 N. E. 2d 31, we held that the courts have no right to make a contract for the parties, and that

the rule of liberal construction does not justify the judicial creation of a contract for the parties which they did not themselves make, nor can an imposition be placed upon one party to a contract of an obligation not assumed by its terms. See also *Jenkins* v. *King* (1946), 224 Ind. 164, 65 N. E. 2d 121; *Smith* v. *Mercer* (1948), 118 Ind. App. 575, 79 N. E. 2d 772.

In view of our conclusions above, we are of the opinion that the trial court erred in overruling appellant's motion for a new trial.

Judgment reversed with instructions to the trial court to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

Bierly, Gonas and Kelley, JJ., concur.

NOTE.—Reported in 179 N. E. 2d 204.