**MERCHANTS NATIONAL BANK AND TRUST COMPANY OF INDIANAPOLIS, Appellant,**

v.

**PROFESSIONAL MEN'S ASSOCIATION, INC., et al., Appellees.**

No. 26221.

United States Court of Appeals
Fifth Circuit.

March 27, 1969.

Rehearing Denied July 30, 1969.

Charles P. Storey, Storey, Armstrong & Steger, Dallas, Tex., for appellant.

Lee Smith, Robert W. Smith, Blanchette, Smith & Shelton, Dallas, Tex., for appellees.

Before TUTTLE and GEWIN, Circuit Judges, and PITTMAN, District Judge.

PITTMAN, District Judge:

This suit was instituted by the Merchants National Bank & Trust Company of Indianapolis (Bank) to recover possession of collateral, or the value of it, under a security agreement claiming that a note from Indianapolis Professional Men's Association (IPMA) for $140,000 was due. Appellees, Professional Men's Association, Inc. (PMA), a Delaware corporation doing business in Texas, in possession of the collateral, and Thomas W. Butler, its president, contend the note was not due. The basis of their contention is that the note and security agreement should be construed together with a contract dated April 23, 1965, between the Bank, PMA, and IPMA, and a cover

letter of the Bank attached to the May 3, 1965, note and security agreement.

The case was tried before a jury with the district court reserving to itself all questions of fact with reference to liability on the note and the right of the Bank to the accounts. The court submitted to the jury only the issues relating to reasonable attorneys' fees, malice, and exemplary damages. There was a jury verdict on these issues in favor of the Bank. However, the district court, in response to appellees' motion for a judgment in its favor, entered an order that the jury findings should be disregarded and entered a judgment for the defendants on the ground that "the terms of the contract of April 23, 1965, are controlling over the terms of the note of May 3, 1965, and all renewals and extensions thereof, and the Security Agreement of May 3, 1965," therefore the note was not due.

## FINDINGS OF FACT

PMA was engaged in the business of collecting bills for professional people. A franchise to operate under the PMA plan was issued to Professional Men's Association of Indiana and Kentucky, Inc. (PMAIK). PMAIK was apparently organized by one Buschmann who obtained two loans from the Bank for the purpose of getting the business started. One loan was for $100,000 which he had borrowed from the Bank, and, in turn, was loaned to PMAIK. The other loan was for $40,000. That note was signed by PMAIK and co-signed by Buschmann.

PMAIK was not successful and was at the point of insolvency. It was liquidated by Buschmann who received all of its assets in satisfaction of his $100,000 loan to PMAIK.

After the liquidation by Buschmann of PMAIK, a new corporation, Indiana Professional Men's Association (IPMA), was formed and the assets of the defunct PMAIK were transferred into the new corporation by Buschmann. The formation of IPMA was accomplished pursuant to a contract dated April 23, 1965, between Buschmann, PMA, and the Bank. Pursuant to this contract PMA was to manage the new corporation, IPMA, which was to assume the $140,000 obligations of Buschmann and PMAIK to the Bank. Among other provisions, the April 23 contract provided:

" * * * It is the intention of the parties that the advances of Merchants shall be repaid only from profits and from excess cash obtained from the liquidation of certain accounts receivable, which cash shall not otherwise be needed in the purchase of new outstanding accounts receivable. * * "

On May 3, 1965, the new corporation, IPMA, executed a note and security agreement to the Bank covering IPMA's accounts receivable which had been assigned to it at the time of its organization. The note was renewed every 90 days, the final such note, and the one sued on, being dated May 2, 1966. Neither the notes nor the security agreement referred to the April 23 contract.

From its inception, IPMA never made a profit but continually sustained losses. When the Bank's demand for payment of the note was not complied with it filed suit in replevin in Texas in the United States District Court to recover the purported collateral or its value, i. e., IPMA's accounts receivable, under the security agreement of May 3, punitive damages, and attorneys' fees against PMA and Butler (president of PMA and IPMA).

As heretofore noted, the district court granted appellees' motion and rendered judgment for the defendants notwithstanding the verdict of the jury.

The April 23 contract was executed in Indiana. The April 23 contract and May 3, 1965 security agreement provided that Indiana law should apply. Although the evidence is inconclusive, apparently the May 3, 1965 note and security agreement and the renewal note sued on, were prepared in Indiana and signed in Texas. The cover letter was prepared and mailed from Indiana to the defendant Butler in Dallas, Texas.

## CONCLUSIONS OF LAW

It should be noted first that this case involves conflict of laws rules.

Which state's contract law is applicable in this case? The district court was in Texas. The Texas conflict of law rule is as follows:

"An exception to the rule that the law governing a contract is determined by the place where made and performed is that if the parties either expressly or by necessary implication, agree that the contract is to be governed by the laws of a particular state, then that intention prevails. By consent of the parties that law becomes a part of the agreement." 12 Tex.Jur.2d, Conflict of Laws, Sec. 12 (1960).

■ Since the April 23 contract and the May 3 security agreement (the latter executed simultaneously with the original note, the renewal of which is the basis of this suit) contained provisions specifically making Indiana law applicable, and the April 23 contract was executed in Indiana, we hold Indiana contract substantive law is applicable.

The basic question in this lawsuit is whether the note sued on was due. The answer depends on whether or not the April 23 contract was admissible evidence. The appellant Bank contends the renewal note sued on and the May 3, 1965, security agreement are not ambiguous and by the express terms of the note it was due.

The appellee contends that the April 23 contract must be read, as the district court held, to govern (1) the terms of the May 3 note, (2) its renewals, and (3) the terms of the security agreement.

This presents two questions: (1) Does consideration of the April 23 contract and cover letter of May 3 violate the parol or extrinsic evidence rule; and (2) Is this question one of evidentiary law or substantive law?

In this case, the evidence in question admitted involved only extrinsic and not parol evidence. Generally, the legal text writers and courts discuss the rule as a "parol or extrinsic evidence rule."

The Second Circuit in Farmer v. Arabian American Oil Co., 277 F.2d 46 (2nd Cir. 1960) has pertinently commented:

" * * * The use of such a name for this rule has had unfortunate consequences, principally by distracting the attention from the real issues that are involved. These issues may be * * * (3) *Did the parties assent to a particular writing as the complete and accurate 'integration of that contract?*" (Emphasis added.)

The court went on to say that in determining these issues no relevant evidence, parol or otherwise, should be excluded.

The two questions, (1) and (2) above, should be considered in their reverse order. First, (2) "Is this question one of evidentiary law or substantive law?" It appears that it is a generally accepted view that the "parol or extrinsic evidence rule" is a rule of substantive law and not a rule of evidence. Freeman v. Continental Gin Co., 381 F.2d 459 (5th Cir. 1967); American Crystal Sugar Co. v. Nicholas, 124 F.2d 477 (10th Cir. 1941); Long v. Morris, 128 F.2d 653 (3rd Cir. 1942); Zell v. American Seating Co., 138 F.2d 641 (2nd Cir. 1943); 3 Corbin Contracts, Sec. 573; 141 A.L.R. 1041 at 1046; 36 C.J.S. Federal Courts § 190, p. 519, n. 96; 20 Am.Jur.Evidence, Sec. 1100.

(It is interesting to note that Texas adopts the view that the parol evidence rule is a rule of substantive law. Shropshire v. Alvarado St. Bank, 196 S.W. 977; Morrison Co. v. Riley, 198 S.W. 1031; Eureka Producing Co. v. Colquitt, 45 S.W.2d 254.)

■ We hold the parol or extrinsic evidence rule is a rule of substantive law, and we must apply it in accordance with the applicable state law. Freeman v. Continental Gin Co., *supra*, and Long v. Morris, *supra*.

Hereinbefore we have held Indiana substantive contract law controls in this case. Therefore, the Indiana law with

reference to parol or extrinsic evidence is applicable.

We now reach the question posed in (1) *supra*, "Does consideration of the April 23 contract and cover letter of May 3 violate the parol or extrinsic evidence rule?"

This case arose after the adoption by Indiana of the Uniform Commercial Code. Prior to the adoption of this Code the Indiana courts had held:

> "Where two instruments are executed as parts of a single transaction and pertain to the same matter, they must be construed together in order to ascertain the intention of the person executing such instruments." Stair v. Oswalt, 121 Ind.App. 382, 97 N.E. 2d 375 (1951).

Similar language appears in Baker v. Gordon, 130 Ind.App. 585, 164 N.E.2d 118 (1960), and in East Side Mercury Sales, Inc. v. Charlie Stuart, Inc., 134 Ind.App. 538, 179 N.E.2d 204 (1962). Factually, the instruments in these cases were all executed on the same date, but this factor does not appear to be crucial nor do the cases hold that this be true as a prerequisite in an application of the rule. The emphasis is (1) whether or not the instruments relate to the same subject matter and not necessarily whether they refer to each other, and (2) whether or not the instruments were executed as parts of a single transaction. Where several instruments executed contemporaneously or at different times pertain to the same transaction, they will be read together although they do not expressly refer to each other. 17A C.J.S. Contracts § 298, p. 128 (see n. 91 Indiana cases). The applicable portion of the Uniform Commercial Code which was in effect in Indiana at the time these transactions occurred is Indiana Annotated Statutes, Sec. 19–3–119 (Burns Replacement 1964).

> "As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the *same transaction* * * *." (Emphasis added.)

The official comment states:

> "Purposes: * * * It is intended to resolve conflicts as to the effect of a separate writing upon a negotiable instrument. * * * This section is limited to the effect of a separate written agreement executed as a part of the same transaction. * * * It may * * * be any type of contract, including an agreement that upon certain conditions the instrument shall be discharged or is not to be paid * *."

 Considering the applicable principle of law in Indiana prior to the Uniform Commerical Code and the purposes as stated in the official comment to the Uniform Commercial Code, it seems clear the April 23 contract, the cover letter, the May 3 note and security agreement, and the renewals are all part and parcel of the same transaction.

We hold the district court was correct in admitting the April 23 contract and subsequent cover letter and in its holding that:

> "It is the intention of the parties that the advances of Merchants shall be repaid only from profits and from excess cash obtained from the liquidation of certain documents receivable, which cash shall not otherwise be needed in the purchase of new outstanding accounts receivable. * * *"

and

> "that IPMA has never at any time earned a profit nor has said corporation at any time had any excess cash obtained from the liquidation of accounts receivable or otherwise."

We further adopt and approve the district court's other Findings of Fact and Conclusions of Law without setting them out at length herein. Merchants National Bank & Trust Co. of Indianapolis v. Professional Men's Association, Inc. et al., F.Supp. (April 11, 1968).

Judgment affirmed.